Wilson *v.* Forsyth.

New trial granted.

[ALBANY GENERAL TERM, March 2, 1857. *W. B. Wright, Harris* and *Gould,* Justices.]

———•ç•———

WILSON, president of the Catskill Bank, *vs.* FORSYTH and others.

Where a debtor interposes a fraudulent obstruction, to prevent his creditor from collecting a judgment on which the creditor's remedy as against the specific property covered by the fraud would have been ample at law, but for the fraudulent obstruction, a court of *equity* will interpose to clear away that obstruction, so that he may pursue his legal remedy with effect.

To entitle himself to this relief, the creditor must show in his complaint, where he follows his remedy against real estate—1. That there is such real estate; 2. That the judgment would have been a lien thereon, had not the fraudulent obstruction been interposed; 3. That by reason of such interposition his exeution cannot reach it, and that therefore his remedy at law is not sufficient.

A complaint alleged that on the 30th of September, 1853, F. was the owner of certain real estate; that on that day the plaintiff commenced an action against him in the supreme court, to recover a debt, and sued out an attachment

Wilson *v.* Forsyth.

against the property of F. as an absconding debtor, and delivered the same to the sheriff, who attached the real estate of F.; that the plaintiff obtained a judgment in his action, and docketed the same on the 24th of January, 1854, and issued an execution the next day, on which the sheriff made a portion of the debt, out of the personal property, leaving a balance due and unpaid upon the judgment; and that F. had no other personal property, from which such balance could be made. That on the 24th of August, 1853, F. assigned all his property, real and personal, to the defendant; who, under such assignment, claimed to hold and possess the right to and over the real estate; and that such assignment was fraudulent and void, and was made with intent to hinder, delay or defraud the creditors of F. and particularly the plaintiff. And the prayer was that the assignment might be set aside as fraudulent and void as against the plaintiff.

*Held* that such a case was not stated as was necessary to give the court *equitable* jurisdiction of the matter; there being no averment that the plaintiff's remedy *at law* was not ample; no claim that the assignment hindered or obstructed him in enforcing his execution, or prevented his selling the real estate thereon; and no averment that a purchaser on such a sale could not contest the validity of the assignment; or that *any* purchaser could not contest it *at law.*

*Held also,* that this was not the usual creditor's bill, of the old practice, to which the return of an execution unsatisfied was a condition precedent, while in this case the execution was not returned at all. Nor was it a suit to remove a cloud upon the title, because the plaintiff did not pretend to have any title.

*Held further,* that the plaintiff having obtained judgment in the action in which the attachment was issued, and an execution having been issued thereon, and a balance remaining uncollected, the sheriff could sell so much of the real estate attached as was necessary to satisfy that balance.

Such a judgment, when obtained, for its lien on both the personal and real estate attached, relates back to the time of levying the attachment; taking its priority from that date.

In determining as to the validity of an assignment made by a debtor, the *intent* of the *assignor* is the material consideration. Honesty of purpose in the *assignee* is not the test.

Nor is it material to inquire what *other* acts, besides making the assignment, the assignor has done; or whether those acts are fraudulent or otherwise.

In each case the only pertinent inquiry is, with what intent was the assignment made.

An assignment giving preferences among creditors, and not embracing *all* the debtor's property, is not void for those reasons.

And, as a debtor is not bound to assign *all* his property, to make his assignment valid, so the assignment is not necessarily rendered invalid by his failing *to deliver* all of his personal property to the assignee, although the whole is assigned.

Although it is a general rule that to give full effect to an assignment of personal property, delivery of the property and a continued change of possession are

Wilson *v.* Forsyth.

requisite, and the assignor's continuing in possession of the whole or even a part of the assigned property is *a badge of fraud;* yet, where there is no inventory of the assigned property, accompanying the assignment, the assignor's retaining some property that he might have assigned, or that—being covered by the general terms of his assignment—he might have delivered under it, is not an act that will make the whole assignment void of course.

To render an assignment void, when not void on its face, as a matter of law, the fact of a fraudulent intent *in making it* must be found, and found from evidence that will fairly support the finding. It must also be an intent to commit a fraud on creditors by *making the assignment*, and not by some entirely independent act.

It is erroneous to charge the jury that if the assignor, on absconding after executing the assignment, carried off a sum of money with him, the assignment is void, and that it becomes the duty of the jury to find that it was executed with intent to hinder, delay and defraud creditors.

It is also erroneous to charge that if the assignor, when he executed the assignment, intended to reserve a large sum of money to his own use, and did take it away with him, after the assignment was made, the case is the same as if the money had been reserved on the face of the assignment.

ACTION to set aside an assignment made by James C. Forsyth, of his property, in trust for the benefit of his creditors. The complaint set forth, that on the 13th of September, 1853, the plaintiff obtained a warrant of attachment against the property of James C. Forsyth, and delivered the same to the sheriff of Ulster county, commanding him to attach the real and personal property of said James C. Forsyth in said county; that certain real and personal estate was attached thereon, by the sheriff; and that the plaintiff afterwards, and on the 23d day of January, 1854, obtained a judgment against said James C. Forsyth for $10,379.57, and issued an execution thereon to the sheriff of Ulster county; that said James C. Forsyth executed an assignment of all his property to the defendant Robert A. Forsyth, dated August 23, 1853; and that said assignment was made to hinder, delay and defraud the creditors of the assignor; and prayed that the same might be set aside, and the order of priority of the several liens thereon adjudged and settled by the court; the plaintiff claiming a priority of lien upon the real estate seized on his attachment. The answer of the defendant, Robert A. Forsyth, admitted the execution of the assignment, but denied that it was executed

with intent to hinder, delay or defraud creditors ; and denied each and every allegation of the complaint.

The cause was tried at the circuit in Greene county, in November, 1855, before Justice WATSON and a jury.

The counsel for the plaintiff having opened the cause to the jury, and stated the nature and object of the action as set forth in the complaint, it was urged and insisted by the counsel for the defendant Robert A. Forsyth, that the plaintiff should not be allowed to introduce any evidence under the pleadings in this action : 1st. Because the plaintiff had not sold the lands described in the complaint, under his execution. 2d. Because no execution on the plaintiff's judgment had been returned unsatisfied in whole or in part. 3d. Because the plaintiff could not, under the pleadings, try a question to remove a cloud upon the title, nor to set aside the assignment, nor to declare a preference among liens on the property. The court overruled the objection, and decided that the plaintiff might proceed to give evidence, in order to maintain the issue on his part ; to which ruling and decision the counsel for the defendant Robert A. Forsyth excepted. The plaintiff's counsel, in his opening, having proposed to give proof of specific facts out of the assignment, and not appearing on the face thereof, for the purpose of proving fraud in fact on the part of the assignor, the counsel for the defendant, with the consent of the court and of the counsel for the plaintiff that such question should be raised at this time, urged and insisted that the plaintiff was not entitled to give evidence of extrinsic facts not appearing on the face of the assignment, for the purpose of showing it to be void, because no such facts were alleged or set forth in the complaint, and because no specific acts of fraud, or acts showing a fraudulent intent, were alleged in the complaint. The court overruled this objection, and decided that the plaintiff might give evidence of extrinsic facts out of the assignment, to show that the assignment was made with intent to hinder, delay and defraud the creditors of the assignor. To this decision the counsel for the defendant excepted.

It was proved, among other things, that immediately after

Wilson *v.* Forsyth.

executing the assignment, James C. Forsyth sailed for Europe, taking with him a bag of gold amounting to $5000, which he had procured with the proceeds of a check drawn by him upon a bank. There was also evidence given, tending to prove that a short time before making the assignment, the assignor had committed various forgeries, for the purpose of raising money.

The plaintiff having rested his case, the counsel for the defendant, Robert A. Forsyth, moved for a nonsuit, and to dismiss the complaint, upon the following grounds, viz: " 1st. Because the plaintiff is not in a position to maintain this action, because he has not sold the land under his execution; and because the execution has not been returned. 2d. Because, under the pleadings, no evidence of fraud is receivable, except such (if any) as appears on the face of the assignment; and because the assignment is legal and valid on its face. 3d. That there is no evidence of actual or intended fraud, either in the assignor or assignee. 4th. That there is no sufficient evidence that the assignor did not deliver all his property to the assignee. That there is no sufficient evidence that the bag of gold belonged to the assignor at the time of the assignment. 5th. That the omission to deliver the gold, or any other personal property not known to the assignee, would not render the assignment void, or affect any other property which passed into the hands of the assignee, and would not be sufficient evidence of fraud to avoid the assignment." The court overruled and denied the motion, and the counsel for the defendant, Robert A. Forsyth, excepted. The following facts were then admitted by the counsel for the plaintiff, viz: That immediately after receiving the assignment, the assignee took possession of all the real estate which belonged to James C. Forsyth, at the time of executing the assignment, the same being all situated in the county of Ulster; and also all the personal property which belonged to James C. Forsyth at the time of the execution of the assignment, and which was principally in Newport and Kingston; and that he continued in possession of the said property, until the same was taken by the sheriff under the attachment; this admission not to apply to any property which may have been taken

away by James C. Forsyth when he left for Europe, but to embrace all the property in Newport, New York and Ulster county, and all of which the defendant Robert A. Forsyth had any knowledge or information.

The defendant having rested, and the evidence being closed on both sides, the judge charged the jury, substantially as follows :

"I charge you, that the plaintiff is in a position to commence this action in order to set aside the assignment of James C. Forsyth, on the ground that it was made with intent to hinder, delay and defraud the creditors of the assignor. The plaintiff's claim, that this assignment is fraudulent and void, and the issue which has been framed by the court and sent here to be tried before you, is whether the assignment was executed by James C. Forsyth with intent to hinder, delay or defraud his creditors. I charge you, that if this assignment was made by James C. Forsyth with intent to hinder, delay or defraud his creditors, it is void as against the creditors of the assignor, although the assignee was free from all imputation of participation in his fraudulent designs. I charge you, that unless the assignor surrendered to the assignee all the property which he had liable to execution at the time of executing the assignment, the assignment is void ; and I charge broadly and distinctly, that if James C. Forsyth did not deliver over all his property to the assignee, the assignment is void. I charge you, that this assignment purports on its face to assign all the personal property of the assignor, and in that respect is free from all legal objection. The assignment is dated the 24th of August, 1853 ; it was executed on the same day. When the assignee was called upon in Kingston, he said he did not know how or when he received it. It is a question for the jury, from the evidence, as to when it was delivered, or whether it was ever delivered. Evidence has been given tending to show that on the 23d of August, 1853, James C. Forsyth got a check for $5000 changed for gold, and took passage, and the next day sailed for Europe in the Cunard steamer Africa. And then you have the evidence of the purser on the Africa, that there was placed in his possession for safe keeping a box of gold ; and the evidence of Judge

Parker, that he met him in Europe on the 4th of September, on the arrival of the Africa. Judge Parker was well acquainted with him; but the jury must compare the description given by the boy in Mr. Cunard's office, and by the purser, with the description given by Mr. Westbrook, of James C. Forsyth's personal appearance. Take all these facts together: did he deliver up and surrender all his property? I charge you, that if he carried off this $5000, or this bag of gold, whatever it may have contained, the assignment in question cannot be upheld, and it becomes your duty to find that the assignment was executed with intent to hinder, delay and defraud creditors. If the assignor intentionally withheld from the possession of the assignee $5000 belonging to the assignor at the time of the assignment, and took the same away with him to Europe immediately after the assignment, with a view to appropriate the same to his own use, then I charge you, that the presumption of fraud mentioned in the statute to which I have referred, would attach to this assignment as against the creditors of the assignor, and the assignment in that case would not be upheld, unless it was made to appear that the same was made in good faith, and without any intent to defraud the creditors. I charge you, that if the assignment was made by the assignor with an actual intent to hinder, delay and defraud the creditors of the assignor, it would be void in toto. It would not in such case be void as to the personal property not delivered, and valid as to the residue, nor would it be void as to the personal, and valid as to the real estate assigned. I charge you, that if when he executed the assignment he intended to reserve the $5000 to his own use, and did take it away with him to Europe, the case is the same as if the $5000 had been reserved on the face of the assignment. Although some judges have regretted the existence of the law which allows an insolvent debtor to make a preferential assignment, yet the law of this state allows such assignments when they are honestly made, and the debtor surrenders his entire estate for the benefit of his creditors. This assignment being valid on its face, the creditors have a right to resort to evidence outside the assignment in order to ascertain whether it was made

with a fraudulent intent.   If the determination of the question depended solely on what appeared on the paper itself, it would have been an idle ceremony for the court to order an issue to be framed with a view to a trial by a jury of that question.   In addition to the facts already alluded to, the jury must look at all the facts drawn out by the proof.   I charge you, that you may consider the evidence tending to prove the fact, that the assignor was largely indebted at the time of making the assignment for money drawn by him upon forged paper, which was about maturing, as a part of the history of this case, upon the question of fraud.   It is claimed that the relationship existing between the assignor and assignee, and between the assignor and his preferred creditors, and the absence of schedules of the assigned property and the debts of the assignor, and also his absconding from the country without taking leave of his family ; also if any of the preferred debts are invalid, are all badges of fraud.   But it does not by any means result that these circumstances, any or all of them combined, are legitimate evidence to prove a fraudulent intent.   These facts may exist, consistently with an honest motive on the part of the assignor, and in regard to these particulars, each case must stand on its own circumstances.   The jury may inquire whether, in other respects, the assignee, although a brother of the assignor, was a suitable and proper person to act as assignee, and whether an honest indebtedness existed in favor of the preferred creditors, although they were related to the assignor ; and if satisfied in these respects as to the bona fides of the assignment, the relationship of the assignor, or of the preferred creditors, would be no objection to the validity of the assignment."

The defendant R. A. Forsyth excepted to this charge, and every part thereof. The jury found by their verdict, that the assignment in question was executed by James C. Forsyth with intent to hinder, delay and defraud his creditors.

The defendant Robert A. Forsyth made a case and exceptions, and the court directed the same to be heard in the first instance at a general term.

Wilson *v.* Forsyth.

*L. Tremain,* for the plaintiff. I. The objection that the plaintiff should not introduce any evidence, because no execution on his judgment had been returned unsatisfied, was correctly overruled. This action will lie to set aside any fraudulent transfer of real estate, which may deter purchasers from bidding upon the property, as soon as a lien is obtained by judgment, without issuing an execution. (*Parshall* v. *Tillou,* 13 *How.* 7. *Clarkson* v. *De Peyster,* 3 *Paige,* 320. 1 *id.* 305. 4 *John. Ch.* 677. 1 *Aikins on Cond.* 513.) In this case, all the personal property of the judgment debtor had been sold on a judgment in favor of the Bank of the Commonwealth. In that action an attachment had been issued and levied upon property prior to the levy by the plaintiff.

II. It was proper to show by the cashier of the Catskill Bank, that the indorsements upon the note on which Forsyth procured the money for which the plaintiff's judgment was rendered, were forged, as that fact enabled the plaintiff to recover for the money, before the notes matured.

III. It was competent to prove that the assignor was largely indebted to various persons at the time of the assignment.

IV. Evidence that such indebtedness arose for moneys procured from the banks on forged paper, was manifestly proper. It was part of the *history* of the indebtedness and connected with it, and part of the *res gestæ.* This court held, in *Pratt* v. *Webster,* that a maker might, on a defense of forgery, prove that the indorsement was forged, as part of the history of the matter. It was competent as evidence that these forged notes were about maturing when the assignment was made, and thereby furnishing a *motive* for fraudulently disposing of his property liable to execution, and secretly absconding from the country with his money. It was competent, within the familiar principle, that in cases involving the question of fraud, the utmost latitude in proving the conduct of the party charged, is allowed. (*Jackson* v. *Timmerman,* 12 *Wend.* 299. *Cary* v. *Hotaling,* 1 *Hill,* 311. *Olmsted* v. *Hotaling, Id.* 317, *and cases cited in last two cases.*)

V. Proof of the *secrecy* with which the assignor absconded at

the time he made the assignment was properly received for the same reasons.

VI. The proof in relation to the $5000 check was competent and vitally important, as proving that the assignor had that amount of money at the time of the assignment, which was taken by him from the country.

VII. The proof showing that the assignor absconded secretly at the time he made the assignment, was manifestly proper to show the motive of the assignor, and his conduct in connection therewith. (*See cases cited under Point IV.*)

VIII. The charge that the assignment was void if made with a fraudulent intent, although the assignee was innocent, was obviously correct. (*Rathbun* v. *Platner*, 18 *Barb.* 272. *See cases cited,* 2 *Paige*, 54. 1 *Sandf. Ch.* 85.)

IX. The charge that if the assignor did not surrender all his property, *this* assignment was void, was correct. There was no attempt whatever made to explain the fact that Forsyth took away the $5000. The assignment gave *preferences* and therefore was void unless the assignor surrendered *all* his property liable to execution. (10 *Paige*, 128. 6 *Hill*, 438, 9. 11 *Wend.* 194. *Burrill on Assignments.*) The *whole* charge must be construed together, and it is manifest from the other portions of the charge, that the judge left the question fairly to the jury. As to evidence *dehors* the instrument, see *Burdick* v. *Post*, (12 *Barb.* 182 *to* 186; *Id.* 168.) As to inventory, see 15 *id.* 56.

X. The verdict was manifestly warranted by the evidence.

*John Thompson*, for the defendant R. A. Forsyth. I. The plaintiff is not in a position to maintain this action. (1.) It cannot be maintained as a *creditor's bill*, because no execution on the plaintiff's judgment has been returned unsatisfied. The jurisdiction of the court in such case rests upon the plaintiff having exhausted his legal remedy. It is no answer to this objection that they proved on the trial that the personal property had all been exhausted by previous executions. The only legal proof that there is no property which can be reached by the execution, *is the officer's return on the process.* While the

execution remains, other property may be found, and the court cannot legally know until the actual return of the execution, that property may not be found, sufficient to satisfy it. (2.) It cannot be maintained as a suit to remove a cloud upon the title, *because the plaintiff has no title.* In order to have brought himself into a position to seek this kind of equitable relief, the plaintiff should have sold the land under his execution, have taken a sheriff's deed, and then have filed his bill. (3.) The allegations of the complaint are not sufficient to entitle the plaintiff to maintain this action to remove a fraudulent obstruction from the way of his execution. In order to entitle him to this kind of relief, he should have alleged that the judgment debtor had property which, but for the fraudulent assignment, would be subject to his execution ; and such facts should be stated affirmatively and positively in the complaint, and not be left to inference. (*McElwain* v. *Willis,* 9 *Wend.* 548.) The complaint is fatally defective in this particular. It alleges expressly that there is no personal property. As to the real estate, the complaint alleges that James C. Forsyth was seised thereof on the 13th of Sept. 1853. There is no allegation that he continued to own the real estate, or that he was ever seised of any real estate after the 13th Sept. 1853. The plaintiff's judgment was not docketed until January 24th, 1854. Until he obtained his judgment he had no such lien as would entitle him to maintain this action. (*Thomas* v. *Merchants' Bank,* 9 *Paige,* 216.) A seizure under attachment is not such a lien as will entitle the creditor to maintain an action of this kind. (*Crippen* v. *Hudson,* 3 *Kern.* 161.) The complaint should have alleged, that but for the assignment the real estate would have been subject to the plaintiff's judgment. It does not do this. (4.) The code of procedure has introduced no alteration of the rules of pleading in this respect. (*Otis* v. *Sill,* 8 *Barb.* 103.) (5.) It is not a case for amendment of the pleadings under the 173d section of the code ; especially as the objection was taken at the trial and overruled.

II. The plaintiff was not entitled to give in evidence extrinsic fact, not appearing on the face of the assignment, for the purpose of showing it to be void, by establishing fraud in fact on

the part of the assignor, because no such facts, nor any specific acts of fraud, nor any facts whatever showing a fraudulent intent, are alleged or set forth in the complaint. The rule of pleading is, that the complaint shall contain a "statement of the facts constituting the cause of action." There is but one allegation upon the subject of fraud, in the complaint, viz : "That the assignment was made by the said James C. Forsyth with intent to hinder, delay or defraud his creditors, particularly the plaintiff." No allegation of fraud is made against the assignee, nor can he be presumed to know any of the specific facts upon which the plaintiff might rely. It is submitted, that under this allegation standing alone—and as against an innocent assignee—the plaintiff should have been confined to such evidence of fraud as he might be able to detect upon the face of the assignment itself, and ought not to have been permitted to prove the various independent and extrinsic facts which he did give in evidence.

III. The proof that the assignor had committed forgeries, was irrelevant. It did not tend to show that the assignment was made with intent to defraud creditors. The forgeries were a separate and distinct matter, in no way connected with the assignment. A man may make a valid assignment even after being guilty of the most serious offenses.

IV. The court erred in charging the jury that if James C. Forsyth made the assignment with intent to hinder, delay or defraud his creditors, it was void as against his creditors, although the assignee was free from all participation in his fraudulent designs. To render an assignment void, it must be *executed* with intent to defraud. The execution of a deed consists not only in signing it, but also in its delivery ; and a delivery implies a person to receive as well as a person to deliver. A perfect execution must therefore be the joint act of the parties— of the assignee in receiving, as well as of the assignor in signing and delivering. If the assignee is free from any intent to defraud, the execution of the assignment cannot be said to be fraudulent. The assignee being himself a creditor acting for the protection of his own debt, and being free from fraud, is entitled to be regarded in a court of equity in the light of a pur-

chaser in good faith for a valuable ·consideration; and should therefore receive the protection which the statute extends to such purchasers.

V. The court erred in charging the jury that unless the assignor surrendered to the assignee all the property which he had liable to execution at the time of the assignment, the assignment is void; and broadly and distinctly, that if James C. Forsyth did not deliver over all his property to the assignee, the assignment is void. Also, that if James C. Forsyth carried off the bag of gold, the assignment in question could not be upheld; and that it became the duty of the jury to find that it was executed with intent to hinder, delay and defraud creditors. The statute makes the non-delivery of the personal property assigned presumptive evidence of fraud; it transfers the burthen of proof to the assignee. But this charge of the judge treats it as being conclusive, and admitting of no explanation or excuse.

VI. The court erred in charging the jury that if the assignor, when he executed the assignment, intended to reserve the $5000 to his own use, and did take it away with him to Europe, *the case is the same as if the five thousand dollars had been reserved on the face of the assignment.* If it had been reserved on the face of the assignment, the assignment would have been absolutely void. No extrinsic proof could have made it otherwise. It would have been pronounced void as a matter of law. But the assignment being valid on its face, the intent with which it was executed was a question of fact. The omission to deliver part of the property merely raised a presumption against the good faith of the transaction, which presumption the defendant was at liberty to introduce proof to overcome and repel. This portion of the charge places it beyond doubt that the judge intended to be understood as holding that the taking away of part of the property, by the assignor, was absolutely fatal to the assignment, and not merely presumptive evidence of fraud.

*By the Court,* GOULD, J. The defendant Robert A. Forsyth takes, in this case, a preliminary point; that the plaintiff, on his own showing, is not entitled to any relief, even if the assign-

ment be fraudulent. The principles bearing on this point, are these : Where a debtor interposes a fraudulent obstruction, to prevent his creditor's collecting a judgment, on which judgment the creditor's remedy (as against the specific property covered by the fraud) would have been ample at law, but for the fraudulent obstruction, a court will interpose its *equitable* jurisdiction to clear away that obstruction ; " so that, the obstruction being removed by the action of the court of equity, he could pursue his legal remedy with effect." (3 *Kernan*, 166.) To entitle himself to this relief, the creditor must show in his complaint, (where, as here, he follows his remedy against *real* estate,) 1. That there is such particular real estate ; 2. That the judgment would have been a lien thereon if the fraudulent obstruction had not been interposed ; 3. That by reason of such interposition, his execution cannot reach it, and therefore his remedy at law is not sufficient. (*See* 9 *Wend.* 561, 2.)

In the case before us, the averments are, that on the 13th Sept. 1853, James C. Forsyth (the assignor) had certain real estate, which is particularly described ; that on that day the plaintiff commenced an action against him, and in it sued out of this court an attachment against the property of said Forsyth, as an absconding debtor, and caused the same to be delivered to the sheriff of Ulster county, (where the lands are situated,) and that said sheriff did immediately attach the specified real estate as the real estate of said James C. ; that, in his said action, the plaintiff obtained judgment against said James C. on the 23d of January, 1854 ; docketed the same in Ulster county the 24th of January, 1854, and issued his execution thereon the 25th of January, 1854 ; on which execution said sheriff made, out of the attached personal property of said James C., some $8000 and over, "and that there still remains due and unpaid on said judgment about $2000 ;" and that said James C. "has no personal property in Ulster county from which any part of the balance of said judgment can be made." The plaintiff proceeds to say that, on the 24th of August, 1853, said James C. made the assignment in question, purporting to convey to his assignee, Robert A. Forsyth, this specific real estate ; that under that

assignment said Robert " claims to hold and possess the right to and over said real estate, given him in and by said instrument ;" (not averring that that is even colorable title ;) and that said instrument is fraudulent and void, and was made with intent to hinder, delay or defraud the creditors of said James C. and particularly the said plaintiff. And he concludes by asking that said assignment be set aside as fraudulent and void as against the plaintiff. This complaint would seem not to make the case, which is necessary to give this court *equitable* jurisdiction of the matter. There is no averment that the plaintiff's remedy, *at law*, is not ample ; no claim that the assignment hinders or obstructs him, in enforcing his execution, or in any way prevents his selling this very real estate on that execution ; and no averment that a purchaser on such sale, (whether this plaintiff, or a third person,) would not be in just as good a position to contest the validity of the assignment, as is this plaintiff here ; or that *any* purchaser could not contest it, *at law*.

I give no weight to the defendant's claim, that there is no averment that James C. was ever seised of this real estate after September 13, 1853 ; because it is entirely clear, (*Code,* § 237, *division* 2,) that the plaintiff having obtained judgment in the action in which the attachment was issued, and an execution having been issued thereon, and a balance remaining due after the application of the attached personal property, the sheriff can sell so much of this real estate attached as may be necessary to satisfy that balance. These provisions make entirely certain the rule, that such a judgment, when obtained, for its lien on both the personal and real estate *attached, relates back* to the time of *levying the attachment ;* taking its priority from that date.

The complaint in this suit, however, can have effect in no other view, than the one above set forth as answered by the preliminary objection of the defendant R. A. Forsyth. Since it is not the usual *creditor's bill* of the old practice, to which the return of an execution unsatisfied was an absolute condition precedent ; while this execution is not returned at all : nor is it

a suit to remove a cloud upon title; because the plaintiff does not pretend to have any title.

There is one other controlling view of this case; and as it is one that is rather to be gathered from several cases, than to be found clearly decided in any one suit, it is best to consider it here, independently of the previous ground, and as if the complaint made a case entitling the plaintiff to the relief he would like to have. And as this view is based entirely on the statute, it is necessary to see precisely what the statute is, as well as to consider what was the common law, without and before any statute on the subject.

The statute is, (2 *R. S. p.* 137, *margin,* § 1,) that "every conveyance, or assignment of any estate or interest in lands, &c., made with intent to hinder, delay or defraud creditors, or other persons, &c., as against the persons so hindered, delayed or defrauded, shall be void." In the face of this statute—too plain to admit of doubt—it will not do to say that honesty of purpose in the *assignee,* has any effect whatever on the *intent* of the *assignor ;* and this latter is the intent with which the assignment is made. *He* makes the assignment, and no one else : and the making intent is his, and no one's else. There is no need of referring to authority on such a point; but it has been so decided, (*see* 18 *Barb.* 272–4.)(*a*)

Nor, on the other hand, is it in the least degree material to the question of the validity of the assignment, to ask *what other acts* besides making the assignment, the assignor has done; or how fraudulent or otherwise those *other* acts are. A very dishonest man may make an honest assignment; and a very honest man may make one that the law will pronounce fraudulent and void. But, in

(*a*) It must be borne in mind that I speak for this case, and the principles it involves; and that, therefore, what I say is spoken in reference only to *voluntary* assignments *in trust* to *pay debts:* not as to conveyances of an actual estate to, and for, the grantee ; (which latter are the cases of most of the English authorities as to fraudulent conveyances.) In England, and here, where the estate and benefit are to and for the grantee, (of a deed of a farm to A. for a price, or to pay a debt to him ;) the *bona fides* of the grantee may and does operate to make good a conveyance which the grantor intended to help him to delay and defraud other creditors.

Wilson *v.* Forsyth.

each particular case, the only pertinent inquiry is, with what intent was the *assignment* made? You may, doubtless, go outside of the mere naked writing, to show *facts* bearing on the question of fraudulent intent. But they are, then, nothing but evidence of what was the intent, with which that writing was made. As, for instance, leaving the assignor in the possession and control of assigned personal property; this (unexplained) tends to show, that the transfer was intended but as a cover; and is always proper evidence, on the question of fraudulent intent in making the assignment. Here it is not the subsequent act that renders void the instrument; but the presumption, therefrom, of the *prior intention;* an intention to give color of title to an assignee, to hinder creditors from interfering with the property; and yet leaving the control, real disposal and benefit, to the assignor. Under this statute, the instrument itself is, like any other instrument or contract, good, or bad, *at the time of its making.* And the then present intent is neither varied by, nor does it give place to, any subsequent intent.

Now, at common law, a debtor could pay a debt by a transfer of property, real or personal, as well as by counting out the silver. And he could so transfer, or pay, to one person for the use or benefit of another who was his creditor, or of *two* others, creditors. And he could, in either way, pay one creditor instead of, or in preference to another. And this, whether he was solvent or insolvent. I am aware that this has, once, been styled (while conceding it to be the common law,) an "iniquitous principle of the common law," (citation in 10 *Paige,* 229.) But with all due deference to the judge who ventured that remark, I must say that I do not see how common law principles could be shaped to general ends in any other way. To make a different general rule, would be to take away a man's rights over his own property, while it remains his own; and to vest, somewhere, an authority perfectly inquisitorial. If there were found, resulting from the general rule, a particular mischief, there could be, by statute, a particular remedy applied; as there has been. To apply this remedy, have been passed the

English statutes against fraudulent conveyances, and the acts of bankruptcy; various statutes in the different states of this union; and the very statute we are considering in this case. And in applying this remedy, (and especially as against fraud,) we must give the statute a liberal construction; to abridge the mischief, and enlarge the remedy. But we must not strain the statute to make it mean what it does not. And, (for one thing,) the statute does *not* mean that an assignment giving preference to one creditor over another, is fraudulent and void. If it meant so, it would have said so; for it was passed at a time when such assignments were well known among us. Nor does it mean that the assignor's failing to assign *all* his property, in any assignment, with or without preferences, makes his assignment fraudulent and void. If it meant that, it would have said it. In other states, where the legislatures did so mean, they have so said, and compelled the assignor to add his oath to the fact that the assignment is of all his property. (*See Burrill on Assignments,* 223 *to* 227.) Among these states is Massachusetts; and in that state, before their statute, which is of comparatively recent date, there were many express decisions that an assignment of *part* of one's property, to *pay* part of one's debts— giving preferences of necessity, and in fact—were perfectly good. Such certainly must be the common law rule; and such I take to be, as certainly, the rule under our statute. And the decisions of our own courts, which are not infrequently claimed to countenance a contrary rule, to hold an assignment giving preferences void, unless it be a transfer of *all* the debtor's property, are by no means authorities to that point. To examine them: 3 *Barb. Ch. Rep.* 644; this was a case where a person having ample property to pay all his debts, (*not* insolvent,) assigned *all* his property, giving the assignee authority to use the avails for the defense of any suits against the assignor by his creditors; and attempting to set apart and appropriate a part of the property for the use of his wife. It was there properly held, that if he had not ample means to pay all, then this appropriation for his wife made his assignment void. And it was further held, if his means were ample to pay the whole,

Wilson v. Forsyth.

*any* assignment of *all* his property could be only to delay and hinder creditors ; the more especially as he provided for the use of those means in defending suits against himself.   And it is to this extent only, that 18 *Barb.* 275, is supported by its references ;  and it does not profess to be so supported any further ; for its citations follow this sentence :  " assignments of this kind [of *all* one's property,] preferring creditors, can only be made by an insolvent debtor."   The subsequent sentence, (that they are only tolerated, " when devoting the *whole* property of the debtor to the payment of his debts ;") is entirely unsupported by even a reference ; and it is not a remark touching the case. The only point in that case was, whether an assignment of all the debtor's property, to assignees who acted in good faith, and were bona fide and preferred creditors to more than the whole amount of the assigned property, could not hold the property as against another creditor ;  notwithstanding the assignor made the assignment with a fraudulent intent—that being unknown to the assignees.   The judge, at circuit, charged the jury that they could so hold as is the English law.   *This* point was taken up ; the charge decided erroneous, and a new trial ordered.

The case in 6 *Hill*, 438, was where a debtor assigned " nearly all" his property, for the payment of four of his creditors ; providing that any surplus after paying those four debts, should go to the use of the assignor, he being insolvent.   And the assignment was held bad on that ground.   But it is supposed that Mr. Justice Bronson, in giving the opinion of the court, and (at page 439, 40) while putting it expressly on that ground, states views against all assignments giving preferences ; and really holds that all one's property must be assigned, or the assignment will be bad, when he says such assignments are allowed to stand only where the debtor " makes an unconditional surrender of his effects, for the benefit of those to whom they rightfully belong ;" citing several cases.   Of these cases, the principal and far the strongest one, containing reviews and citations of all his others, is 11 *Wend.* 587.   And by turning to this case and examining it, with its references, we shall probably be able to arrive at such basis as there is for such a hold-

ing; (supposing, for the present, that the learned judge ever so held.)   And to take them in their order.

First, in date, of those references, is 2 *P. Wms.* 427 ; there a party, not having committed any act of bankruptcy, to bring him within that statute, assigned *part* of his property to a particular creditor to pay his debt; (which was held good;) and that case is so far from holding that to make it valid the assignment should have been of *all* the debtor's property, that it holds, expressly, that had it been of the whole, it would for that reason have been void.   And that case says, " there is no such thing as an equitable bankruptcy ; it must be a legal one" (to give the statute effect ;) and " there may be a reason for a bankrupt to prefer one creditor before another ;" and further, it holds that if a chose in action were so assigned, and the assignee were thereby obliged to come into a court of equity to enforce it, the court of equity would enforce it.   The next case cited is 1 *Atkyns,* 154, (*marginal page.*)   This was also a *partial* assignment, to pay a particular debt; and there was no decision in the case.   But the issues, settled to be tried, referred to the date of the assignor's " bankruptcy ;" and to the actual transfer prior to that date ; the reasoning, and the reporter's note of the case, going to sustain the assignment.   The reasoning is Lord Hardwicke's.   We next find 5 *Term Rep.* 234. 424.   At page 234 it is held, (and that is the whole case,) that a confession of judgment to one creditor, whereby he obtained two hours' priority of levy, and thereby a preference over another creditor, was not fraudulent, within the statute against " delaying, hindering or defrauding" creditors, and that statute covers judgments by confession ; though made with the express intent to give the preference. And at page 424, though the case is one of a *partial* assignment, giving preferences, and really does not meet the point under discussion, although the assignment was held good, it is said by Lord Kenyon, " it is neither illegal nor immoral to prefer one set of creditors to another.   It was never held, even in the case of a trader, that he could not give a preference in some respects, provided the property he set apart for the payment of one or more favorite creditors, did not exhaust his whole estate ;

Wilson *v.* Forsyth.

or approach so near to a disposition of the whole as that the exception was merely colorable;" citing what precisely supports him, 1 *Burr.* 477, 8. While in this case (in Burrow) the court, by Lord Mansfield, say, " there is a great difference between the conveyance of *all* and of a *part.* A conveyance of a *part* may be public, fair and ·honest; as a trader may sell, so he may openly transfer many kinds of property, by way of security ;" while conveying *all* would be an act of bankruptcy, (under their statutes; that point should be borne in mind in reading all these English cases.) At page 425 of 5 *Term Rep.* Ashurst, J., says, " there is no objection to a debtor's preferring one set of creditors to another, unless in certain cases on the bankrupt laws. Where the bankrupt laws do not interfere, a debtor may give preferences to particular creditors ;" the statute against fraudulent conveyances not stopping it. In the next case, (6 *Term Rep.* 152,) a creditor took part of a debtor's stock in trade, as a security for his debt; and it was held good. And that is all there is of that case. Next is 8 *Term Rep.* 521. There the transfer did not profess to be of all the debtor's property ; and it gave preferences. Nor did the creditor make any point of its being, really, of all; and it was held good. And there (at page 528) in support of the deed, and treating it as if of all the debtor's property, Lord Kenyon says; " but putting the bankrupt laws out of the case, a debtor may assign all his effects for the benefit of particular creditors." He (Lord Kenyon) having previously (5 *T. R.* 424) decided that, (not " putting the bankrupt laws out of the case,") a debtor might assign part, for such a purpose. Next is 4 *East*, 1; which was an action to set aside a confessed judgment, which really did delay and hinder the (there) plaintiff, in collecting his debt; and yet it was held good. And (at page 13,) Lord Ellenborough, Ch. J., says, " it is not every feoffment, judgment, &c. which will have the effect of delaying or hindering creditors of their debts, &c. ; that is therefore fraudulent within the statute; for such is the effect, *pro tanto,* of every assignment that can be made by one who has creditors. Every assignment of a man's property, however good and honest the consideration, must diminish the fund,

out of which satisfaction is to be made to his creditors. But
the feoffment &c. must be devised of fraud," &c. Next is
3 *Maule & Sel.* 371 ; where a debtor, for general benefit of all
creditors, assigned *all* his property ; and the act was sustained.
But it was sustained, and stated to be, on the principles of the
cases in 5 *Term Rep.* above set forth, which were cited on the
argument by the prevailing party ; and (3 *M. & Sel.* 376) ap-
proved by Lord Ellenborough. And (page 375) he says, " the
principle of those decisions would be destroyed, if we should
hold an assignment fraudulent, because it may operate to the
prejudice of a particular creditor." Next, (coming to our own
courts,) is 5 *Cowen,* 547. There there was a general assign-
ment of *all* the debtor's property, securing certain benefits to
himself, and with various other provisions. And the decree
made in the case, by the court for the correction of errors, (*see
p.* 586,) is, " that the assignment is void by reason of the trust,
or provision contained therein, for the benefit of said William
Cairns," (the assignor.) And I can find nowhere in the case
even a remark that a debtor, to give preferences in an assign-
ment, must assign *all* his property. And the reporter's note is
to no such effect. The main point he notes is, that " an insol-
vent debtor *may* pay some creditors in preference to others ;
and may secure his preferred creditors by assignment in trust
for such creditors ; but he can make no assignment of any part
of his property in trust for himself."

Turn now to the case specially relied on, 11 *Wend.* 187. It
was a case in the same court, (for the correction of errors ;) and
the actual decision (*p.* 225, 6) is, " that the assignment is void,
because it makes the preference given to the creditors of the
assignors, designated as class No. 2, to depend on the condition
that the preferred creditors shall give the assignors an absolute
discharge from their debts." And this was, actually, the only
point in the case ; and the first paragraph of the reporter's head
note is not in the decision. It might seem (at page 194) to be
found in the opinion of Mr. Justice Sutherland, where he says,
" it is perfectly settled, both in England and this country, that
a debtor in failing circumstances has a right to prefer one cred-

itor or set of creditors to another, in all cases not affected by operation of a bankrupt system. He may assign the whole of his property for the benefit of a single creditor, in exclusion of all others; or he may distribute it in unequal proportions, either among a part or the whole of his creditors. No matter how, or upon what principles, the distribution is made, if the debtor devotes the whole of his property to the payment of just debts, neither law nor equity inquires" &c. And yet, it is perfectly apparent, by this same case, that the doctrine contended for has really no support from that able judge: for, (at page 195,) he says of assignments giving preferences, "all that is now competent for our courts to do, is to see that they fairly appropriate all the insolvent's property, or such portions of it as he undertakes to assign, to the payment of his just debts; and are not made the instruments of placing it beyond the reach of his creditors, and for the benefit, immediate or remote, of the insolvent himself." Nor does Mr. Justice Bronson, (in 6 *Hill,*) as I understand his opinion, mean to say any such thing as is claimed. He does not mean to go beyond the case before him; and (looking fairly at his opinion, as a whole,) it would seem to me that, in the remark cited at the beginning of this discussion, he intends no more than he says at page 440, that the assignor must "part with all control over the property, and devote it absolutely to the benefit of his creditors, without any reservation or stipulation for his own advantage." And this is found as true, by referring it to such property as he does assign, as it would be if it refer to his assigning his whole estate.

It must follow, from the conclusions already stated, that the assignment of Jas. C. Forsyth, (either independent of the statute, or under it,) although it gave preferences, and did not assign *all* his property, would not be for that reason void. And as he was not bound to assign all his property to make his assignment valid, so his assignment is not necessarily rendered invalid by his failing to deliver all of his personal property to the assignee, though none is excepted on the face of the paper. It is true that to give full effect to an assignment of personal property, delivery of the assigned property, and a continued

change of its possession are required.   And a failure to deliver, or rather the assignor's continuing in possession of the whole (or even a part) of the assigned property, is a *badge of fraud.* But, where there is no inventory of the assigned property, accompanying the assignment, the assignor's retaining some property that he might have assigned, or that (being covered by the general terms of his assignment) he might have delivered under it, is not an act that of course makes his whole assignment void. And there is no case, in which it was ever thought of being held, that an assignor's failing to *empty his pockets,* (whether of $5, or $500 ;) or his not delivering his watch, or his breastpin, or his penknife, made void a general assignment, otherwise good.

All an assignor's acts, connected with, or coincident in time with, his assignment, may generally be inquired into ; because the law allows the greatest latitude, in searching for evidences of a fraud, which from the nature of the case, must be confined almost exclusively within the assignor's bosom.   But to make the instrument void, when not so on its face, as matter of *law,* the fact of a fraudulent intent in making it, must be found, and found legitimately, from evidence that will fairly support the finding ; and it must be, also, an intent to commit a fraud on creditors by making the assignment ; and not by some *entirely independent act,* which might, and probably would, have been done precisely as it was, had no assignment been made or dreamed of.

As this court understand the law to be, the charge given at the circuit is certainly erroneous, where it says, that unless the assignor surrendered to the assignee all the property which he had, liable to execution, at the time of executing the assignment, the assignment is void ; and that if J. C. F. did not deliver over all his property to the assignee, the assignment is void.   It is also erroneous in saying that if J. C. F. carried off this $5000 or the bag of gold, whatever it may have contained, the assignment in question cannot be upheld ; and that it became the duty of the jury to find that it was executed with intent to hinder, delay and defraud creditors.   It is also erroneous

in saying, that if, when J. C. F. executed the assignment, he intended to reserve the $5000 to his own use, and did take it away with him to Europe, the case is the same as if the $5000 had been reserved on the face of the assignment.

[ALBANY GENERAL TERM, March 2, 1857. *Wm. B. Wright, Harris* and *Gould*, Justices.]