Stickney et al. *v.* Crane et al.

Isaac Stickney & Co. *v.* Crane & Colcord, and Trustee
Henry Ladd.

*Assignment for the benefit of Creditors. Trustee Process.*

An assignment for the benefit of creditors, if made with the intent on the part
of the assignor to hinder and prevent a particular creditor from getting his·
pay, either from the assigned property or otherwise, except at the pleasure·
of the assignor, is fraudulent and void as against such creditor, notwith-
standing the assignee accepted and acted under the assignment in good
faith and in ignorance of such purpose on the part of the assignor.

Such assignment would not be rendered valid by the fact that the particular
creditor whom the assignor intended to hinder from getting his pay, was by
the terms of the assignment postponed to so many other creditors whom
the assignor desired to have paid in the order of preference named in the
assignment, that the assigned property would be exhausted before such
particular creditor could be reached.

If an assignment for the benefit of creditors be fraudulent and void as to any
particular creditor, such creditor may attach and hold the personal property
and funds in the hands of the assignee by the trustee process.

But the assignee would not be chargeable under such trustee process with
payments made by him to creditors, or even to the assignor, and in viola-
tion of the assignment, before the service of the trustee process upon him.

The assignee could not be charged under such trustee process for the amount
of a note taken and held by him for assigned property sold by him on credit
before the service of the trustee process.

Trustee Process. The cause was referred to a commis-
sioner who reported, among other things rendered immaterial by
the decision of the court, the following facts :

The defendants were formerly merchants doing business at
Franklin, in this state, and on the 3rd of October, 1855, were
possessed of goods and chattels and choses in action amounting
to about $12,500, including $1,994 in cash deposited in the
Missisquoi Bank, at Sheldon. On that day they made an
assignment of substantially all their property, except the money
deposited in the Missisquoi Bank, to the trustee for the benefit
of their creditors. The defendants were indebted to the plain-
tiffs in about $3,000, and to other creditors to the amount of
$15,000. This assignment was made by the defendants with
the purpose and intent of preventing and hindering the plaintiffs.

from getting their pay on their debt, either from the property assigned or otherwise, except at the defendants' pleasure, and with the purpose and intent of securing to their other creditors named in the second and third classes of the assignment, in the order of preference there named, their pay so far as the property assigned would answer that end. This assignment specifically described the property assigned and the creditors to be paid therefrom, and the order of their payment. It provided that the assignee should dispose of and convert into money all the assigned goods and chattels, according to his best judgment and discretion, and with all seasonable dispatch, and collect all of the assigned choses in action, and apply the proceeds, *first*, to pay the assignee a reasonable compensation for his services, and to defray all cost and expenses reasonably incurred by him in the discharge of his trust; *secondly*, to pay various claims against the defendants in favor of the Missisquoi Bank, and also one debt in favor of one Searle. Then followed five separate classes of creditors, each preferred in the order in which they were stated in the assignment. The debt of the plaintiffs was mentioned in the sixth class. The assignment in the last class included all the creditors of the assignors not specifically named. The assignee accepted the assignment in good faith, and in ignorance of any purpose on the part of the assignors to hinder or delay any of their creditors  He immediately took possession of the assigned property in the store where it had been kept, and leased the store for six months.

It was at the time mutually expected and understood by Crane and Ladd, that Ladd should have the assistance of Crane in managing the business, and that the business of selling goods at retail and on credit should go on, and the purchase of small additions to the stock should be made, until the whole business could be closed gradually in the discretion of Ladd most advantageously. But in this expectation and understanding Ladd acted in entire good faith in fact, and in the belief that it was for the benefit of the creditors. Accordingly the business was continued six months or more after the assignment was made, sales being made on credit to the amount of $1,704, and purchases of ordinary merchandise being made with assignment

Stickney et al. *v.* Crane et al.

funds to the amount of $200 or thereabouts, which were again sold and the proceeds were put into the assignment assets.

The sales on credit were all collected by the assignee, except one debt of $40, for which the assignee held the purchaser's note. In all these transactions of purchase and sale on credit, (excepting the $40 debt not collected,) the clear result ·in cash was greater than it would have been had the assignee proceeded to sell the assigned property for cash in the ordinary way by immediate sales for what the property would bring.

The assignee realized from the assigned property $8,333.59, and had before this suit paid out to the creditors first provided for in the assignment, $8,026.32; of which $1,369.96 was paid out under the circumstances hereafter particularly stated.

The $1,994 cash hereinbefore mentioned as deposited by Crane & Colcord in the Missisquoi Bank was realized by them from drafts drawn, on the eve of their assignment and in view thereof, against produce in the hands of their consignees in Boston. This sum was kept out of the assignment by Crane, the active partner, for the purpose of securing it to his private use, and was deposited in said bank under the agreement with Mr. Rand, the attorney of the bank, that it should not be drawn out until the paper held by said bank against the assignors, and provided for in the second class of debts in the assignment, should be paid, although it was expected that the assigned property would realize sufficient cash to pay these debts, as it in fact did. This money remained there on deposit until July 19th, 1856, when there was due to the Missisquoi Bank on the paper it held, after applying a former dividend made by the assignee, the sum of $4,642.45. The assignee on that day paid on this paper from the assignment funds $3,272.49. The residue of said paper was paid to the bank on the same day by Crane, out of the $1,964 deposited there as above mentioned. The paper held by the bank was then given up by the bank to Mr. Rand, then acting for Crane. But the assignee was kept ignorant by Crane and Rand of the full payment of this paper, and supposed that said balance of · $1,369.96 was then due thereon, and that the notes were given to Rand to hold for the bank in order to Ladd's more conveniently paying the same, while the purpose of Crane and Rand

was to hold said notes in that way and receive from Ladd the residue of the amount thereof not already paid by him, and when so received, for Rand to pay it over to Crane for him to pay such debts of his with as he might think best.

Accordingly Ladd, in ignorance of the fact that said notes had already-been paid fully, from time to time between July 19th, 1856, and the commencement of this suit, paid over to Rand on said notes sums amounting in all to $1,426.72. But Rand paid in the mean time by consent of Ladd $567.80 on a note in the first class of creditors, called the Searle note, which had been omitted in the prior dividends and payment, but of the balance Rand took $400 to repay that sum due him from Crane for money lent Crane by Rand, and paid over the balance, being $458.92, to Crane.

. The money paid over by Rand to Crane as above stated, was kept and used by Crane in common with his other money, but at some time after the assignment, (the particular time did not appear,) Crane paid creditors named in the third class of the. assignment to an amount greater than the sum he received from Rand.

At the date of the commissioner's report there still remained creditors preferred in the assignment to the plaintiffs, unpaid, to an amount sufficient to cover all assets in the trustee's hands in any alternative, reported by the commissioners, and these creditors claimed that the trustee, so far as he had funds, should pay to them.

| | |
|---|---:|
| The assignee had on hand at the date of his disclosnre, assets in cash amounting to | $307.27 |
| And if he was chargeable with the money paid to Rand on the bank debt, as before stated, he had also | 1369.96 |
| Making total cash | 1677.23 |
| But if being so chargeable he should be allowed the amount paid on the Searle note, as above stated, | 567.80 |
| He would then have cash on hand to be accounted for, | 1109.43 |

The commissioner also found that if the assignee was legally entitled to such compensation only for his services, as if he had

closed up his business without delay and without buying and selling on credit, then he had overpaid himself in the matter by the sum of $100, which in that case should be added to the amount before stated as cash on hand, making $407.27 ; and that if the assignee was chargeable with the amount of the debt for his sale on credit not collected, then there should be added to the above sum the amount of said debt and interest, $49.

At the time of the disclosure the trustee had on hand of the specific articles assigned, one set of hay scales worth $113.

The commissioner upon these facts decided *pro forma* that the trustee was not chargeable.

Upon this report the county court adjudged the trustee not chargeable, to which the plaintiffs excepted.

*Isaac F. Redfield,* for the plaintiffs.

*J. Rand,* for the trustee.

POLAND, CH. J.   The plaintiffs claim to hold the trustee liable for funds that came into his hands by an assignment made by the principal debtors to him as assignee for the benefit of their creditors.

The commissioner to whom this case was sent by the county court to ascertain and report the facts, reported " that said Crane & Colcord made said assignment with the purpose and intent of preventing and hindering the plaintiffs from getting their pay on their said debt, either from the property assigned or otherwise, except at the pleasure of said Crane & Colcord, and with the purpose and intent of securing to their other creditors named in the second and third classes of the assignment, in the order of preference there named, their pay so far as the property assigned would answer that end."   The commissioner also reported that the trustee was wholly ignorant, at the time said assignment was made to him, of any such purpose of Crane & Colcord to delay, hinder, or defraud the plaintiffs.

The plaintiffs insist that the existence of such unlawful purpose and design in making said assignment by Crane & Colcord,

renders such assignment fraudulent and void as to their creditors, or at least as to the plaintiffs, though the assignee at the time of accepting the assignment was ignorant of such purpose.

The authorities which have been produced seem to establish the position assumed. In *Rathbone & Dow* v. *Platner*, 18 Barb. 272, it was decided that an assignment made by a debtor, of his property, with the fraudulent intent to hinder, delay and defraud his creditors, is void, although his assignees are free from all imputation of participating in his fraudulent designs, and they are themselves *bona fide* creditors of the assignor, and are to take the entire avails of the assigned property, to pay their preferred debts.

The same doctrine was also fully held in *Wilson* v. *Forsyth et al.*, 24 Barb. 105. GOULD, J., who delivered the opinion of the court, says, " It will not do to say that honesty of purpose in the *assignee* has any effect whatever on that of the *assignor*, and this latter is the intent with which the assignment is made. He makes the assignment, and no one else, and the making intent is his, and no one's else." So in a case in 1 Sandf. Ch. 85, the Vice Chancellor says, speaking of a general assignment in trust for creditors, " If Phillips made it with the intent to hinder, delay or defraud creditors, it is void, although his assignees were perfectly honest, and entirely ignorant of his designs." The opinions in these several cases seem to be well supported in their reasoning, upon general legal principles, and by many authorities more or less analogous to the point decided. The same doctrine is also laid down by Mr. Burrill in his work on Assignments, 2nd Ed., 421 and 422.

We are satisfied that upon principle, aside from authority, this is the true view of the law. Probably no one would doubt but that when the assignor's object in making a general assignment, was to avoid payment of all his debts, it would be fraudulent and void; why then should it not be so regarded, when his object is to defraud a single creditor; at least so far as such creditor is concerned ? It has been sometimes attempted (though it is hardly done in the present case) to liken a general assignment to a trustee or assignee for creditors, to a sale to a *bona fide* purchaser for value, or to a particular creditor in

satisfaction of his own debt, in both of which cases, the good faith of the grantee will enable him to hold the property, though the grantor was actuated by a dishonest design to defraud some creditor. But in the case of a trust assignment, there is really in making the assignment but one party, the assignor; he is ordinarily the only one who has any purpose or motive in the transaction, and they are often wholly completed without the knowledge of the assignee, and if he has knowledge, he is a merely nominal party, who pays no consideration, and parts with no right in the transaction. The obligation of the assignor to his creditors, and his duty to make payment to them, is a sufficient consideration to support the assignment in trust as a valid contract, if made honestly and in good faith by the assignor, but if the intent of the assignor be fraudulent and unlawful, there is no countervailing equity, and good faith, like that of a *bona fide* purchaser for value, to overcome it. It is argued for the trustee, however, that in the present case such unlawful design of the assignors could have no effect because it really was wholly ineffectual, and the same result would have been produced by the assignment if made with ever so honest a purpose; that as the law when this assignment was made, allowed the assignor to prefer creditors, and say which should be first paid under the assignment, and as the property proved insufficient to pay all, the plaintiffs, who were placed in the lowest class of creditors, would have received nothing, though the assignors might have desired they should be paid. But it is the dishonest design and intent, which the statute is aimed against; it is the unlawful intent which avoids the contract, and not the mere consequence or result of it. So it is well established, that a conveyance of property is not necessarily void under the statute because its effect may be to hinder and delay creditors, if there be no dishonest design to produce such effect in making it. In the early case of *Meux* v. *Howell*, 4 East 1, Lord ELLENBOROUGH said, " It is not every feoffment, judgment, &c., which will have the *effect* of delaying and hindering creditors of their debts, &c., that is therefore fraudulent within the statute, for such is the effect *pro tanto* of every assignment by one who has creditors. Every assignment of a man's property, however good and honest

the consideration, must diminish the fund out of which satisfaction is to be made to his creditors. But the feoffment, judgment, &c., must be *devised of malice*, fraud, or the like, to bring it within the statute." The same distinction has been observed in almost innumerable cases since. See Burrill on Assignments 404, and several subsequent pages.

Upon this ground we are all satisfied that the plaintiffs have the right to treat this assignment by the principal debtors to the trustee as being fraudulent and void. It therefore becomes unnecessary to consider the various other objections taken to it.

The assignment, as to the plaintiffs, being illegal and void, whatever was in the trustee's hands, under it, when the trustee attachment was served, was reached by such attachment and holden by it, as effects and credits belonging to the principal debtors.

As the trustee acted in good faith in taking the assignment and in carrying out its provisions, it is not claimed by the plaintiffs, that he can be made liable for any funds he received under it, which he had paid out to the creditors pursuant to the terms of the assignment. The trustee admits that he had in his hands of said assigned property at the time of the service of the plaintiffs' writ, the sum of $307.27 in money—a note of $40, taken for some of the property sold on credit, and a set of hay scales.

We see no reason why the trustee should not be held liable for the $307.27, and also for the hay scales as specific property in his hands.

The plaintiffs claim that he should be made liable not only to this extent, but also for various other sums which had passed out of his hands before the trustee suit was brought, upon the ground that they were paid out in violation of the provisions of the assignment, and of his duty as assignee.

In this category they claim to hold the trustee for the funds received by him for his own services; for $100 paid for rent of store; for the $40 note taken for goods sold on credit; and for the money paid to Rand on notes against the principal debtor, $858.92.

The theory of the plaintiffs' counsel as to these claims is this, that though the plaintiffs are only entitled to hold the trustee at

Stickney et al. *v.* Crane et al.

all, upon the ground, that as to them the assignment was wholly void and inoperative, and that the property received by the trustee was still the property of the principal debtors, yet that, succeeding in this, they are then entitled to take their place, as the sole creditors under the assignment, and call the trustee to account for whatever he received under the assignment, and to hold him liable for any departure from its provisions .

It appears to us that this ground is wholly untenable, and entirely at variance with the ground upon which the plaintiffs are allowed to hold the trustee at all ; that the plaintiffs can not be allowed to say that the assignment is void, and that the assigned property still belonged to the assignors, and that being granted, to then turn round and claim that the trustee held the property for the creditors, and for them especially, under the assignment, and call for an accounting on that basis.

Whether the creditors under the assignment could hold the trustee liable for the money paid to Rand upon the demands which were named in the schedule of first class claims, but which had really been paid by the principal debtors themselves, it is not necessary to decide. As it was done in good faith, with no knowledge that they had been paid by the principal debtors, and it does not appear that the trustee was guilty of any negligence in not knowing it, it would seem at best doubtful, if he could be made liable even upon that basis. But so far as the plaintiffs are concerned, who utterly repudiate the assignment, and claim that the funds all the while belonged to the principal debtors, it seems clear they can not complain of it. If the money had been paid over directly to the principal debtors, before the trustee suit was brought, we do not see how they could well claim to hold the trustee for it. As to the sum paid for store rent, and the sum received by the trustee for his services in the business, these appear to have been assented to by the principal debtors, and the creditors who did not dissent to the assignment, and we do not see how the plaintiffs can complain of them.

The $40 note is to be regarded as a note in the hands of the trustee belonging to the principal debtors, but the trustee can not be holden for it, as has been often decided.

As the trustee is found to have conducted in good faith and

been guilty of no fraud, we see no ground to deprive him of his costs in the county court. In this court the plaintiffs will be entitled to recover their costs against the trustee, as they succeed in reversing the judgment below.

The judgment of the county court is reversed, and judgment rendered that the trustee is liable for the sum of $307.27 in his hands, and for the hay scales as specific property.