Sutherland, J.
The defendants, Mary A. Halsey and Oscar P. Horthum- were partners doing business under the firm name of Halsey & Horthum, as merchants ; and by an assignment dated October 30, 1865, the execution of which was acknowledged October 31, assigned all their property, in terms which would carry all them property, partnership and individual, to the defendant De Camp, in trust, first, after paying the expenses of the execution of the trust, to pay certain partnership debts in the order specified (among others, first, in full, an alleged partnership debt due De Camp); second, to pay all partnership debts. pro rata; third, to pay all the individual debts named in the account of the creditors of the assignors ; and of the sums owing to such creditors, De Camp is stated to be a creditor to the amount of $9,985.11, the amount for which he is preferred; and in the inventory of the assigned estate he is stated to be indebted to the assignors, on book account, in the sum of about $16,175.42.
There is no allegation in the complaint, nor was there any evidence on the trial, that the assignors had any individual property at the time of the assignment. This action was brought by the plaintiffs as partnership creditors, having judgment with execution returned nulla bona, to *31 set aside the assignment, as made in fraud of the plaintiffs and other creditors.
The complaint alleges that the defendants, Halsey & Northum, fraudulently combined with said De Camp in making the assignment, with the intent to defraud their creditors; and that the assignment was made as a mere cover, and tó enable the said Halsey & Northum, by collusion with the said De Camp, to. retain, use, and appropriate to their own use a large portion of their property, notwithstanding such assignment, and by means of said assignment to cover the same from their creditors.
I do not think the proofs in this case establish their allegations of fraudulent combination and collusion with De Camp. In view of his evidence I should not be justified in finding or holding that he accepted the assignment with any fraudulent intent, or with a knowledge of any alleged fraudulent purpose or intent of the assignors in making the assignment, or with a knowledge of any of the fraudulent acts of the assignors, hereafter referred to, just previous to the assignment.
De Camp proved his debt to the amount he was preferred, and he acknowledged his indebtedness to the amount stated in the inventory, and he testified to his responsibility and ability to pay the balance. Indeed no question was made as to his ability to pay the balance due from him.
It is not pretended that the assignment is void on its face. The evidence does not establish—I think I may say it does not tend to show—that the preferred debts, any or either of them, were not bona fide. The evidence does not tend to show that the assignors reserved, upon or by any secret trust or otherwise, any interest in the property or estate mentioned in the inventory and which they intended the assignee should have the administration of under the assignment.
I think I may say it would b.e quite consistent with the evidence to hold that the assignors intended and expected that the property mentioned in the inventory and which they intended the assignee to take possession of and ad *32 minister under the assignment, would be appropriated, under the assignment, to the payment of dona fide debts. But there is evidence tending to show, and which I shall assume does show, that the assignors, a few days before the assignment, fraudulently bought merchandise to a considerable amount on credit, which they did not intend to pay for, and never have paid for; that • at the time of the assignment the assignors had a large amount of money which was not mentioned in the inventory, nor delivered to the assignee, and never has been delivered to the assignee, and which they intended fraudulently to conceal, and did fraudulently conceal, both from their creditors and their assignee ; and that the money so concealed was the result or proceeds of the merchandise so fraudulently bought, and of other merchandise sold shortly before the assignment, and of collections made in contemplation of the assignment; and that the possession of the money was attempted to be concealed, a portion of it by false entries in the books of the assignors, and probably a small portion of it by being put or left in the hands of third parties, upon secret trust for the. use of the assignors.
There is nothing in the case to show that the merchandise so fraudulently bought, just before the assignment, was bought with the intention of increasing the fund or property which the assignors intended to pass under the assignment to be appropriated under it to the payment of preferred debts. The evidence tends to show that the assignors intended to conceal and keep the proceeds of that merchandise and the other money so concealed both from them creditors and their assignee, for their own benefit.
Now the question is, whether these fraudulent acts of the assignors, just before their assignment, or this fraudulent concealment of the money both from their creditors and their assignee, renders their assignment fraudulent and void.
I do not see how the assignment could or did aid the assignors in their fraudulent scheme; and, therefore, I cannot see how I can say that it was made with the intent to hinder, delay, or defraud their creditors.
*33 The assignment carried all the property of the assignors, including the money so fraudulently concealed "both from creditors and assignee and not in the inventory. The assignee had and has ample power, and no doubt, it was- and is his duty under sections 1 and 2 of the act of April 17,'1858 (Laws of 1858, 506), to, unmask the fraud of the assignors and to reach the moneys so fraudulently concealed. (See also McMahon v. Allen, 35 N. Y., 403; and Brownell v. Curtis, 10 Paige, 210 disapproving Bayard v. Hoffman, 4 Johns. Ch., 450).
I refer to Wilson v. Forsyth (24 Barb., 105), and American Exchange Bank v. Webb (15 How. Pr., 193), as showing that the non-delivery of the money to the assignee and the fraudulent concealment of it from him and the creditors, without any knowledge of or participation in the fraud on the part of the assignee, would not make the assignment fraudulent and void.
As to the point that the assignment was delivered before the execution of it was acknowledged, I think the presumption is that it was not delivered until after the acknowledgment.
The complaint must be dismissed; but, under the circumstances, without costs to either' party as against the other.
If the assignee’s answer in this case had been as open and frank as it might probably truthfully have been, I should have directed his costs to be charged on the fund; but, considering the answer which was put in, I shall not make any such direction.
Complaint dismissed, without costs.