27 300
106 110

27 300
111 152

27 300
114 536

27 300
136 311

27 300
143 614

# JAMES B. McMINN *v.* PATRICK WHELAN AND MOSES O'CONNOR.

PROOF OF EXECUTION OF INSTRUMENTS IN WRITING.—An instrument in writing, executed and attested by a subscribing witness in a foreign country, or at a place beyond the jurisdiction of the Court, can be proved by evidence of the handwriting of the party who executed it.

SERVICE OF SUMMONS BY PUBLICATION.—When an order is made for the service of summons by publication, and a summons is issued, and a supplemental complaint is afterwards filed and a summons issued thereon, the original action becomes merged in the action as supplemented, and the Court will not acquire jurisdiction of the persons of absent defendants by publication of the original summons; but the summons issued on the supplemental complaint must be served by publication.

HOW SUMMONS SHOULD BE PUBLISHED.—If service on a defendant is attempted to be procured by publication, the summons must be published as it was when the order of publication was made.

JUDGMENT WITHOUT JURISDICTION OF PERSON.—If it appear by the record or otherwise that the Court never had jurisdiction over the person of the defendant, the judgment will be pronounced a nullity, whether it comes directly or collaterally in issue, and a sale of property under it will be void also.

JURISDICTION OF PERSON.—If jurisdiction of the person of defendant is to be acquired by publication of the summons in lieu of personal service, the mode prescribed must be strictly pursued, and in such case there will be no presumption in favor of jurisdiction.

ACTION TO SET ASIDE CONVEYANCE OF LAND.—A lien on land acquired by an attachment, cannot be rendered effectual for the purpose of impeaching a conveyance of the land made by the defendant in the attachment, until judgment is obtained in the suit in which the attachment issued.

CREDITOR WITHOUT JUDGMENT.—A creditor at large, without a judgment, is not in a position to maintain an action to set aside a conveyance of property made by his debtor.

ASSIGNEE OF VOID JUDGMENT.—If the assignee of a void judgment, together with the cause of action on which it was rendered, offers the same in evidence, this does not prove that the assignee is a creditor of the defendant in the judgment.

DEED FOR LAND SOLD FOR TAXES AS EVIDENCE.—If the certificate of sale of property for taxes is made to "Michael Dundon," and the deed under the certificate is made to "Patrick Michael Dundon, Jr.," and it appears in proof that there were two persons, Michael and Patrick Michael, and there is no evidence that Patrick Michael acquired the right of Michael by assignment, the deed is not admissible in evidence without proof that the two names are for the same person.

CLAIMANT OF LAND CANNOT ACQUIRE TAX TITLE.—One who is in possession of land, claiming it as his, when it is assessed for taxes, cannot, by failing to pay the tax and allowing the land to be sold for the same, and becoming the purchaser, and obtaining a Sheriff's deed, acquire a title to it.

CONDUCT OF A JUDGE DURING A TRIAL.—If the character of a witness is called in question during a trial, and the Judge makes a remark from the bench indorsing his respectability, it is good cause for a reversal of judgment, if the testimony of the witness is material.

STATEMENTS AND EXCEPTIONS.—A statement on motion for new trial, or a bill of

exceptions, should contain only so much of the evidence or a reference thereto as may be necessary to explain the grounds specifically set forth as causes for new trial. Judges or Courts, in settling statements, should see that the above rule is complied with.

Appeal from the District Court, Twelfth Judicial District, City and County of San Francisco.

The facts are stated in the opinion of the Court.

*Edward Tompkins*, for Appellant.

The power of attorney from Maume to Dundon was not sufficiently proven, and its admission was error.

Whether secondary evidence as to the execution of the power of attorney should be received or not, was a preliminary question, to be legally and correctly decided by the Judge. Whether O'Farrell, the attesting witness, was absent from California; whether his signature could be proved in California; and whether due diligence had or had not been used by the plaintiff to ascertain these alleged facts, were matters to be decided by the Judge upon the testimony introduced upon those points. The plaintiff testified that in his search for O'Farrell, "he found nobody of the name of O'Farrell; and that he thought he looked into some of the Directories." If this was sufficient as *prima facie* proof, still it was not conclusive; and accordingly the defendant offered to rebut it by showing, "from the City Directory, that there were a number of persons in the city by the name of O'Farrell," which proof, if received, would have overturned the *prima facies* of the plaintiff's testimony, by showing that he did not consult the City Directory, the most obvious source of information, and so did not use due diligence in that regard. But the Judge treated the matter as if testimony were to be received on only one side, and no rebutting testimony to be admitted, which is insisted to be error.

Again: If it be held that the absence of the attesting witness was properly accounted for, this would not admit testimony as to the genuineness of the signature of the donor of

the power, but only testimony as to the genuineness of the signature of the attesting witness. The rule is, that " the testimony of the subscribing witness, or proof of his hand-writing *and of his absence should be given.*" (*Jones* v. *Under-wood*, 28 Barb. 481; *Story* v. *Lovett*, 1 E. D. Smith, 153; 2 Abbott's N. Y. Digest, p. 709, Sec. 1,316; 2 Phillips' Ev. 4th Am. Ed. 460, 500, etc.) See a curious history of the origin of the rule, *Fox* v. *Reil*, 3 Johns. *478.

But in the case at bar, the plaintiff proved only the absence of the attesting witness, and then, after suggesting that such witness resided in Limerick, without endeavoring to prove his handwriting by any method, the plaintiff proceeded at once to prove the handwriting of the maker of the power of attorney.

The Court below erred in excluding the tax deed from Hunt, the Tax Collector, to Patrick Michael Dundon, and the exception thereto was well taken.

The ground of exclusion was, that the certificate of the tax sale was to Michael Dundon, whereas the deed was to Patrick Michael Dundon, Jr.; and these were two different persons, and no connection shown between them by assignment. The law only knows one Christian name. (*Franklin* v. *Talmadge*, 5 Johns. 84; *Roosevelt* v. *Goodwin*, 2 Cowen, 463.) The law also disregards the word *Jr.*, or *junior*, as a part of a name. (*People* v. *Collins*, 7 Johns. 549; *Foot* v. *Youngs*, 11 Wend. 522.)

The Court below erred in its charge to the jury in regard to the tax deed to Ryan, under which the defendants claimed title, and the exception thereto was well taken.

The mere fact that a person is in possession of land as a trespasser, but claiming it as owner, will not prevent his acquiring title to it under a tax sale. There must be something more, throwing an obligation upon him, making it his duty to pay the taxes. The lands must be assessed to him; (*Moss* v. *Shear*, 25 Cal. 38;) *or*, he must have agreed with the owner to pay the taxes; *or*, finally, he must be a trespasser in possession, excluding the rightful owner, *and the annual*

*value of the land must be equal to the tax assessed.* In these cases the law throws the obligation and duty of paying the taxes upon the person in possession, and he will not be permitted to make title against the real owner under a tax sale. (*Gaskins* v. *Blake,* 27 Miss. 675.)

[In the case of *McMinn* v. *O'Connor et al, ante,* 238, reference is made to a brief of Dwinelle, Shafter & Goold, in which they discussed the ruling of the Court in excluding the judgment roll in the case of *Gleason* v. *Maume.* The brief was not published there because the Court in its opinion in that case leave the discussion of that point to the opinion in this case. The following are extracts from the brief—Reporter] :

The record being that of a Court of general jurisdiction, having jurisdiction of the subject matter, it will be presumed that it acquired jurisdiction of the parties.

The reported cases in which Courts have avoided judgments rendered by Courts of general jurisdiction, upon a defective service of process, or without any service, have been generally cases where the judgment was attacked *directly* in the same Court by motion or on appeal, or by a bill in equity. If Courts upon such occasions have said that the judgment was *void,* that must be considered as an inaccurate mode of expressing the proposition that the judgment could not be sustained, unless the Court has expressly said that it is " absolutely void, and not merely voidable." (*Whitwell* v. *Barbier,* 7 Cal. 54 ; *Bell* v. *Thompson,* 19 Cal. 706.)

" On appeal a judgment by default will be reversed, unless the record show service on the defendant, though possibly a judgment so obtained could not be impeached collaterally." (*Schloss* v. *White,* 16 Cal. 65 ; *Per contra, Hart* v. *Seixas,* 21 Wend. 40.)

But, "There is a very decided distinction between the *want* of jurisdiction and *irregularity* in procuring jurisdiction. In the latter case some of the authorities speak of it as a want of jurisdiction, but when so employed it is a loose and im-

proper use of the term. In the one case the judgment can be attacked in any form—that is, directly or collaterally ; in the other, only by a direct proceeding against the judgment in the Court which rendered it, or in an appellate Court upon an appeal from the judgment." (*Whitwell* v. *Barbier*, 7 Cal. 63, 64.)

The distinction is, that the jurisdiction of a Court of general jurisdiction need not be shown affirmatively, but will be presumed. (*Bloom* v. *Burdick*, 1 Hill, 140 ; *Borden* v. *The State*, 6 Eng. 519 ; *Hardy* v. *Gholson*, 26 Miss. 70 ; *Tallman* v. *Ely*, 6 Wis. 244.)

But even in the case of a Court of general jurisdiction, if the record affirmatively shows that it had not in fact acquired jurisdiction of the person of the defendant, that fact will be fatal to the judgment. (*Borden* v. *Fitch*, 15 John. 141 ; *Whitwell* v. *Barbier*, 7 Cal. 54, 63.)

In regard to inferior Courts nothing will be presumed, and if the party in interest is to be brought in by means of publication of notice, the want of such notice will be a fatal defect. (*Whitwell* v. *Barbier*, 7 Cal. 64 ; *Bloom* v. *Burdick*, 1 Hill, 140 ; *Mills* v. *Martin*, 19 Johns. 7 ; *People* v. *Huber*, 20 Cal. 83 ; 3 Phillips Ev. 4th Ed. 137, note 293.)

It is provided by 2 Revised Statutes of New York, page *319, §13, (Sec. 12,) that in cases of partition of lands unknown owners may be served by publication. Section two hundred and sixty-nine of our Practice Act is taken from this provision, and does not differ from it in substance.

Held, *at first*, that a judgment made in partition under this statute was not valid, and could be impeached collaterally by unknown owners, if the record did not show on its face that they had been served by such publication. (*Denning* v. *Corwin*, 11 Wend. 648.)

But this doctrine was immediately overruled, and the Court held that such a judgment by a Court of general jurisdiction was not absolutely *void*, so as to be impeachable *collaterally*, but merely *irregular*. The true proposition is, that a judgment of a Court of record within the State, of general juris-

diction, and proceeding according to the course of the common law, where a want of jurisdiction is not apparent on the face of the record, cannot be impeached by the parties to it so long as it remains unreversed. (*Granger* v. *Clark*, 9 Shep. 128; *Van Dyke* v. *Bartedo*, 3 Green, 224.)

But the want of averment of service of process, or a defective averment on that point, is not an affirmative showing of want of jurisdiction, but at the utmost suggest only error to be corrected directly on appeal. (*Smith* v. *Bradley*, 6 Smedes & Marshall, 485; *McIlrath* v. *Butler*, 7 Iredell, 398; *Bloom* v. *Burdick*, 1 Hill, 130; *Foot* v. *Stevens*, 17 Wend. 483; *Cole* v. *Hall*, 2 Hill, 625.)

If it be said that the record disclosed a defective service of an imperfect summons, the obvious reply is, that these are evidently not what the Court adjudged to be a regular service of regular process, and we refer to those cases cited in this argument where the process was clearly defective in substance or in the proof of service, and there can be no difference between the cases of good process without proof of its service, and of defective process with sufficient proof of service, as both cases are defective in not showing service of process. The presumption in favor of jurisdiction is not rebutted by an irregular process appearing in the record. After a lapse of time, conveyances, powers of attorney, fulfilment of conditions precedent, and the like acts, will be *presumed* in order to connect possession with title. (*Beall's Lessee* v. *Lynn*, 6 Har. & Johns. 361; *McConnell* v. *Bowdry's Heirs*, 4 Monroe, 395; *Buhols* v. *Boudousquie*, 8 Mart. Lou. [New S.] 221; *Clinton* v. *Campbell*, 10 Johns. 475.)

But under the same circumstances, on an attempt to connect possession with title, a defective and void deed was offered in evidence and rejected, and yet a good deed was presumed. (*Gitting's Lessee* v. *Holl*, 1 Har. & Johns. 14, 18.

Even if a Court of general jurisdiction does not acquire jurisdiction of the parties, the judgment is not therefore void, but only irregular, and can be attacked only directly, and not collaterally.

39

It is only when a Court has no jurisdiction of the *subject matter* of the proceeding in which an order is made, that the order is wholly void for want of jurisdiction. (*Bingham* v. *Disbrow*, 14 Abbott, 251; *Cole* v. *Hall*, 2 Hill, 625; *Bloom* v. *Burdick*, 1 Hill, 141; *Foot* v. *Stevens*, 17 Wend. 483, 488; *Hart* v. *Seixas*, 21 Wend. 40; *Newham* v. *City of Cincinnati*, 18 Ohio, 323; *Lamprey* v. *Nudd*, 9 Foster, N. H. 299; *Grier* v. *McLendon*, 7 Geo. 362; *Reed* v. *Wright*, 2 Green, Iowa, 15; *Barry* v. *Greenfield*, Wright, 348.)

If the judgment is not void on its face it cannot be attacked collaterally. (*Hall* v. *Hiffly*, 6 Humph. 44; *Barron* v. *Yart*, 18 Ala. 668; *Hopkins* v. *Howard*, 12 Texas, 7; *Seely* v. *Reed*, 3 Iowa, 374.)

When it appears on the face of the record of a judgment of the Court of ordinary and proceedings, that the Court had jurisdiction over the subject matter, such judgment will be conclusive when offered in any other Court, and cannot be collaterally attacked. (*Grier* v. *McLendon*, 7 Geo. 362; *Mobley* v. *Mobley*, 9 Geo. 247; *Pease* v. *Whitten*, 31 Maine, 117.)

*G. F. & W. H. Sharp*, for Respondent.

It is established law, as to the judgments of all Courts, *when it appears from the record itself*, that summons was not served in one of the statutory modes, jurisdiction of the defendant is not acquired. Such statute being *stricti juris*, the most exact compliance with all the prerequisites of the statute must be shown. *No judgment* can be obtained without it. In the absence of one requirement, that purporting to be a judgment is *coram non judice* and void.

How could a Court pass beyond the limits of the very law that confers the authority? (Practice Act, Sec. 30; *Gossett* v. *Howard*, 10 Q. B. 452; *Bigelow* v. *Stearns*, 19 John. 39; *Harrington* v. *The People*, 6 Barb. 607; *Steen* v. *Steen*, 3 Cushman, 513; *Noyes* v. *Butler*, Id. 613; *Denning* v. *Corwin*, 11 Wend. 648; *The People* v. *Cassel*, 5 Hill, 164.)

Again, in acquiring jurisdiction by *publication*, there are no

presumptions in favor of the record.  It can be impeached or
set aside collaterally.   (See cases cited above.)

It is only in reference to matters *within their common law
jurisdiction* that records of Courts of general jurisdiction can-
not be attacked.   As to new rights conferred by statute, they
are *inferior Courts.*

"Whenever a new right (service of summons by publica-
tion) is created by statute, and its enforcement is committed
to a *Court of general jurisdiction, such Court* quo ad hoc *is an
inferior Court, and must pursue the statute strictly.*"   (*Cohen* v.
*Barrett*, 5 Cal. 210 ;  *Whitwell* v. *Barbier*, 7 Id. 321 ;  *Reynolds*
v. *Harris*, 14 Id. 678 ;  *Denning* v. *Corwin*, 11 Wend. 647 ;
*Sharp* v. *Spier*, 4 Hill, 76 ;  *Williamson* v. *Berry*, 8 How. 495.)

That jurisdiction may always be inquired into in every
action, by every Court, where the proceedings are relied upon
by any one claiming a benefit thereunder.   (*Whitwell* v.
*Barbier*, 7 Cal. 62 ;  *Gray* v. *Hawes*, 8 Id. 568 ;  *Hampton* v.
*McConnell*, 3 Wheat. 234 ;  *Mills* v. *Duryea*, 7 Cranch. 481 ;
*Chemung Canal Bk.* v. *Judson*, 8 N. Y. 254 ;  *Dobson* v. *Pearce*,
12 N. Y. 156 ;  and cases before cited.)

The respondent stands in the same if not a better position
than Maume.   We cannot conceive how appellants, having
derived possession from Maume's tenant, could resist, by force
of that record and sale, his (Maume's) claim to be restored to
possession.   In law they entered in subordination to but in
fraud of Maume's right.

They must restore the possession before they could show, if
they had such, a title adverse to Maume.   They can show only
that his title has expired, and has centered in them.   This
must be, however, a legal title ; and if derived at a Sheriff's
sale, it must be supported by a *valid* judgment.   This is true
of all titles derived under judicial sales.   (*Johnson* v. *Scissam*,
3 John. 499 ;  *Johnson* v. *Bard*, 4 Id. 230 ;  *Johnson* v. *Denni-
son*, 4 Wend. 558 ;  *McKune* v. *Montgomery*, 9 Cal. 576.)

Certainly Maume could attack this judgment, if invoked
against him, in ejectment, to be restored to his possession.
Respondent's position is superior to his, because he was *not a*

*party to the suit.* Respondent could only attack it when used against him. He could neither prevent nor control the suit; hence, he cannot be affected by it. This is the first opportunity that is presented for so doing.

The charge of the Court in regard to the tax deed to Ryan was correct.

When this property was assessed and offered for sale, Ryan claimed it; hence, if valid in its preliminaries, the tax sale to him, and payment by him, would only amount to the payment of the tax, (*for the tax ran against him as a claimant,*) and would not result in passing the title. .(*Kelsey* v.·*Abbott,* 13 Cal. 619.)

By the Court, Cᴜʀʀᴇʏ, J.

This is an action of ejectment commenced on the twenty-third of September, 1863, for the recovery of a lot of land on the corner of Folsom and Tenth streets, in San Francisco, and for damages for withholding it from plaintiff. By the answers, the defendants denied the material averments of the complaint, and then pleaded the Statute of Limitations, and also an equitable defense on which they prayed affirmative relief. The cause was tried by a jury, without first disposing of the equitable defense, and a verdict was rendered in favor of plaintiff for the recovery of the possession of the premises, and one hundred and eighty dollars damages. On this verdict judgment was entered. The defendants moved for a new trial, which was denied.

Much evidence was given at the trial respecting the possession of the premises by Mathew Maume and his tenants existing in the year 1854, and thence continuing to the time of the defendants' entry thereon, which was in 1861. That Maume had the prior possession of the premises was determined by the jury in the affirmative, and as there was evidence authorizing the verdict in this respect, no just complaint can be made, because it was not more ample.

The plaintiff claimed title to the premises by a deed of con-

veyance produced in evidence, bearing date the tenth of May, 1861, purporting to have been executed by Mathew Maume, by his attorney in fact, Michael Dundon.

To prove that Dundon had authority as attorney for Maume to execute in his name the deed of conveyance to the plaintiff, the plaintiff offered in evidence an instrument in writing under seal, purporting to be a power of attorney executed on the thirty-first of January, 1859, by Mathew Maume, then a resident of Limerick, in the United Kingdom of Great Britain and Ireland, to Michael Dundon, of Brookville, in the County of Clare, Ireland, appointing and constituting the said Dundon the attorney for the said Maume, and granting to him power to sell and convey, for and in the name of the constituent, the premises in controversy. This power of attorney appears upon its face to have been executed in the presence of one Thomas O'Farrell, and when it was offered in evidence it was objected to by defendants on the ground that it was not proved to have been executed by Mathew Maume. The plaintiff then introduced evidence to the Court for the purpose of laying a foundation for the introduction of secondary evidence of the execution of the instrument by Maume. The plaintiff himself was sworn and examined respecting the efforts he had made, preparatory for the trial, to discover the attesting witness, if within the jurisdiction of the Court. His testimony showed that he had exercised great diligence for the purpose of finding the witness, and also to discover some one by whom his handwriting could be proved. After this evidence was admitted, the plaintiff proved the handwriting of Mathew Maume by a person who knew it, and then submitted the power of attorney to the Court for inspection, and at the same time offered it in evidence as proved. The defendants objected that the absence of the subscribing witness was not sufficiently accounted for, and also that his handwriting was not proved; and accompanying this objection they proposed to prove by exhibiting the City Directory that a number of persons were residing in San Francisco by the name of O'Farrell, and insisted that they were the proper persons of whom to inquire

for the witness. The Court overruled the objections and the instrument was read in evidence to the jury. To this ruling the defendants excepted.

In the case of *McMinn* v. *O'Connor and Others*, *ante*, 238, we have declared, on the authority of *Landers and Wife* against *Bolton*, 26 Cal. 409, and the authorities cited in that case, that an instrument in writing, executed and attested by a subscribing witness in a foreign country or at a place beyond the jurisdiction of the Court, could be proved by producing evidence of the handwriting of the party who executed it. The presumption in the case is, that the attesting witness, who was in Ireland when he signed the document as a subscribing witness, remained there, and consequently was beyond the 'jurisdiction of the Court at the time of the trial. (*Valentine* v. *Piper*, 22 Pick. 89, 90.)

The defendants, for the purpose of showing that the title of Mathew Maume had passed to one of them, offered and gave in evidence a judgment obtained by Timothy Gleason against Mathew Maume on the twenty-seventh of October, 1860, and also the judgment roll and the proceedings in the case. The plaintiff objected to the evidence offered controverting the validity of the judgment, and maintaining that it was *coram non judice* and void.

On the second of November, 1859, Gleason commenced an action by filing a complaint in the District Court of the Twelfth Judicial District against Mathew Maume, Samuel Adamson and Mary E. Maume, the object of which was to recover from Mathew Maume seven thousand dollars, alleged to be due from him on a contract set forth in the complaint, and to obtain a decree against the defendants Adamson and Mary E. Maume, setting aside as fraudulent certain mortgages on real property, executed and delivered to them by Mathew Maume, and a decree against Mathew Maume, compelling him to execute a mortgage on the same real property as security for the payment of the debt sought to be recovered, in pursuance of an alleged agreement that he would so secure the same. A summons was issued on the day the complaint was filed, and on

the same day the attorney for the plaintiff therein made an affidavit that the defendants were absent from the State, two of them residing in Ireland and the other in England. Whereupon the Court made an order that the service of the summons be made by publication in a certain newspaper specified in the order, for at least once a week for three months. On the fifth of December, 1859, the plaintiff Gleason filed a supplemental complaint in the action against the same persons and also against Michael Dundon, Michael Maume and Johanna Maume as defendants. This supplemental complaint embodied, by direct averments and reference, the same matters contained in the original complaint, and further alleged and charged that Mathew Maume, with intent to cheat and defraud the plaintiff Gleason out of the debt due him, entered into an agreement with Michael Dundon, in Ireland, to come to California for the purpose of covering up, concealing and disposing of his property so as to cheat and defraud the plaintiff and other of his creditors out of their debts; and fraudulently agreed with Dundon to convey to him certain real property in the City of San Francisco, for the fraudulent purpose of cheating and defrauding his creditors.

The supplemental complaint is replete with charges of acts of the defendants by which they designed to defraud and had defrauded the creditors of Mathew Maume, and that the defendant Dundon had thus acquired title to a portion of his property, and others of the defendants had obtained from him mortgages on other portions of his property, all of which transactions were fictitious, and intended to cheat and defraud the creditors of Mathew Maume. In conclusion, the plaintiff Gleason, in addition to the relief which he sought in his original complaint, prayed that the conveyance from Mathew Maume to Dundon might be declared fraudulent and void, and that the same might be decreed to be delivered up to be cancelled.

By the supplemental complaint it was sought to obtain an accounting by Johanna Maume and Michael Maume for the income and profits of the property of Mathew Maume while

in their possession and use. A summons was issued on this supplemental complaint on the day it was filed. On the tenth of the same month the Court made an order, on an affidavit of the plaintiff's attorney therein, that the service of the summons be made on the three absent defendants by publication thereof in a specified newspaper for at least once a week for three months.

The proof of the publication of summons in the Gleason case was by the affidavit of "the bookkeeper in the office of the printer and publisher of the *Daily Morning Call* newspaper," made on the second day of May, 1860. This affidavit states "that a notice, of which the annexed is a printed copy, has been regularly published in the said newspaper at least once a week for three months, commencing on the 8th day of November, 1859, and ending on the 24th day of April, 1860." The "notice" mentioned in the affidavit purported to be a summons, issued on the second of November, 1859, in the case of *Timothy Gleason*, plaintiff, against *Mathew Maume et al.*, defendants, and directed to the defendants named in the original complaint. It differed from the summons actually issued, showing that it had been altered. Instead of its simply requiring the defendants to answer "the complaint filed," it required them to answer "the complaint (original and supplemental) filed." In the statement of the cause and general nature of the action the summons first issued set forth, among other things, that the action was brought "to set aside certain conveyances made by said Mathew Maume to the defendants, Samuel Adamson and Mary E. Maume, alleged to be fraudulent and void," while the summons as published contained the same notice, with the name of Michael Dundon interpolated after the name of Mary E. Maume as one of the defendants. At the time of the filing of the supplemental complaint making Dundon, Michael Maume and Johanna Maume parties defendants, there had been four publications of the "notice" or summons mentioned in the affidavit of the bookkeeper according to such affidavit. While we do not intend to impugn the integrity of the bookkeeper, the convic-

tion is forced upon us that some one concerned was guilty of tampering with the record by interpolating matter in the summons that was not therein when it was issued, and when the order for its service by publication was made.

By filing the supplemental complaint and issuing a summons thereon, the original action became merged in the action as supplemented by the addition of parties and subject matter, and the summons last issued should have been served by publication in order to clothe the Court with jurisdiction of the persons of the absent defendants. The publication of the original summons, even if it had been made, would have been ineffectual to give the Court jurisdiction of the persons of the absent defendants, because the original complaint had been superseded by the supplemental complaint. Mathew Maume had the right to appear and be heard as to the additional matters charged as well as in respect to the matters contained in the original complaint which had been carried into the supplemental complaint. (*Lawrence* v. *Bolton*, 3 Paige, 295 ; *Scudder* v. *Vorhis*, 1 Barb. 55.)

The defendant's counsel insist that the judgment in the Gleason case cannot be questioned collaterally, for the reason that the jurisdiction of a Court of general or superior jurisdiction will be presumed in the absence of evidence on the face of the record to the contrary. The case of *Peacock* v. *Bell*, 1 Saund. 73, is generally relied on in support of this doctrine. In that case it was declared that "the rule for jurisdiction is that nothing shall be intended to be out of the jurisdiction of a superior Court, but that which specially appears to be so ; and, on the contrary, nothing shall be intended to be within the jurisdiction of an inferior Court, but that which is so expressly alleged." The case here cited involved the question of jurisdiction as to the subject matter of the action, and not as to the person of the defendant, and it may be doubted if a case can be found which sanctions any intendment of jurisdiction over the person of the defendant, when the same is to be acquired by a special statutory mode, without personal service of process. If jurisdiction of the person

40

of the defendant is to be acquired by publication of the summons in lieu of personal service, the mode prescribed must be strictly pursued. (*People* v. *Huber*, 20 Cal. 81 ; *Ricketson* v. *Richardson*, 26 Cal. 149 ; *Kendall* v. *Washburn*, 14 How. Pr. R. 380.)

It is a cardinal principle in the administration of justice that no man can be condemned or divested of his right until he has had an opportunity to be heard. Though the rule in relation to Courts of general or superior jurisdiction is, that their jurisdiction will be presumed until the contrary appears, it may be doubted whether the rule obtains when the course prescribed for acquiring jurisdiction of the person of the defendant is contrary to the course of the common law. (*Oakley* v. *Aspinwall*, 4 Coms. 521 and 525.) Be this as it may, if it appear by the record or otherwise that the Court never had jurisdiction over the person of the defendant, the judgment will be pronounced a nullity, whether it comes directly or collaterally in question ; and this is so whether the Court be of inferior or superior jurisdiction.

The judgment in the Gleason case contains no averment nor recital from which it can be inferred that the Court acquired jurisdiction of the person of the defendant Mathew Maume. If it did it would not be conclusive of the assumed jurisdiction in such a case. It is a fundamental rule that no Court can acquire jurisdiction by the mere assertion of it, or by deciding that it has it. If it could be intended in the absence of evidence to the contrary that such jurisdiction was acquired, such intendment is overcome by the evidence furnished by the defendants themselves, consisting of the affidavit of the bookkeeper of the newspaper publisher and the notice or summons annexed to that affidavit.

Neither the summons issued on the original complaint nor that issued on the supplemental complaint was published. The interpolation noticed so changed the summons pretended to have been published as to destroy it as evidence of service of process by publication, and hence we must hold that no publication of any summons issued in the case was made.

Other objections were made touching the sufficiency of the respective affidavits on which the orders of publication were made concerning which we shall express no opinion, as we deem the point of objection considered fatal to the Gleason judgment; the result of which is that such judgment, for want of jurisdiction in the Court that rendered it, over the person of Mathew Maume, must be held void, and as a consequence, the execution thereon and the sale of the property under and by virtue of it must be held void also.

But it is insisted on the part of the defendants that the attachment which was issued and levied upon the property in question and which with all rights acquired thereby, had been assigned to the defendant O'Connor, constituted a lien upon the property, which continues notwithstanding the judgment obtained by Gleason against Maume may be void, and that O'Connor, having such lien, had an interest in the premises which entitled him to impeach the conveyance to the plaintiff on the ground of fraud. If the defendant O'Connor had a lien on the premises by reason of the attachment, that lien could not be rendered effectual for the purpose of impeaching the conveyance to the plaintiff until judgment obtained in the suit of *Gleason* against *Maume*, and it is possible that no such judgment will ever be obtained. If the defendant O'Connor, as the asignee of Gleason, was at the commencement of this action, and when it was tried, the creditor of Mathew Maume, he was simply a creditor at large without a judgment, and hence was not in a position to maintain an action by answer in the nature of a cross bill in equity to set aside the conveyance made to the plaintiff. (*Crippen* v. *Hudson,* 3 Kern. 161; *Reubens* v. *Joel,* 3 Kern. 488; *Bishop* v. *Halsey,* 3 Abbott, 400; *Wilson* v. *Forsyth,* 24 Barb. 117.)

Even if it had been competent for the defendants, in the capacity of creditors at large of Mathew Maume, to have impeached in this action the conveyance to the plaintiff as fraudulent, they failed to establish the fact that they were creditors, or that either of them was a creditor, of plaintiff's grantor. The void judgment of Gleason, with the assignment

of it, together with the alleged cause of action on which it purported to be founded, did not prove O'Connor to be a creditor of Maume, and no other evidence was offered to prove him such. The attachment and proceeding therewith connected given in evidence by the defendants, but finally excluded by the Court on the plaintiff's motion, were, as the case then stood, incompetent for the purpose for which they seem to have been produced in evidence, and were properly excluded.

The defendants gave in evidence a judgment recovered in May, 1861, by Bernard Rooney against Mathew Maume, foreclosing a mortgage on other property in San Francisco than that in controversy, and in connection with it, showed that after the sale of the mortgaged premises there remained due the sum of about ninety dollars. The object of this evidence was declared by the counsel for the defendants on the trial to be merely to show that the Rooney judgment was not satisfied.

But it was subsequently attempted to be shown that the balance due had passed by assignment to the defendant O'Connor. It was sought to be proved that Rooney had made an assignment of the balance due on his judgment through the agency of an attorney in fact, and the defendants having failed to establish this fact to the satisfaction of the Court, the document purporting to be Rooney's assignment was excluded on the plaintiff's objection. The testimony offered to prove the authority of the person who pretended to act as the attorney in fact for Rooney we regard as very unsatisfactory, and we are of opinion the document was properly excluded.

The defendants failed to show that they, or either of them, were creditors of Mathew Maume, and consequently, were not in a position to impeach the conveyance of the premises to the plaintiff as fraudulent and void as to Maume's creditors. (*McElwain* v. *Yardley*, 9 Wend. 548; *Crippen* v. *Hudson*, 3 Kern. 161; *Reubens* v. *Joel*, 3 Kern. 488; *Bishop* v. *Halsey*, 3 Abbott, 400; *Wilson* v. *Forsyth*, 24 Barb. 105.) As between the grantor and grantee, a conveyance executed to defraud creditors is valid. (*Bolt* v. *Rogers*, 3 Paige, 154; *Gale* v.

*Gale,* 19 Barb. 249 ; *Chamberlin* v. *Barnes,* 26 Barb. 160 ; *Gardenier* v. *Tubbs,* 21 Wend. 169 ; 1 Story's Eq. Jur., Sec. 371.)

In addition to the equitable defense interposed by the defendants, they offered evidence to show that the defendant O'Connor had acquired title to a portion of the property by virtue of a sale and conveyance of it for the payment of taxes. Two tax deeds were given in evidence, the one bearing date on the sixteenth of July, 1860, executed by the Tax Collector to Patrick Michael Dundon, Jr. ; the other bearing date the nineteenth of July, 1862, executed by the Tax Collector to R. F. Ryan.

The first tax deed was objected to by plaintiff on several grounds. The certificate of sale, which was produced in evidence by the defendants, showed that the premises described in it and in the deed, were sold to Michael Dundon, whereas the deed was made to Patrick Michael Dundon, Jr., and there was no evidence showing that the grantee named in the deed had acquired the right of Michael Dundon by assignment or otherwise. But it is insisted on the part of defendants that Patrick Michael Dundon, Jr., is presumptively the same person as Michael Dundon. This position, in view of the authorities cited to support it, might appear in some degree plausible had it not been proved on the trial that there were two persons by the name of Dundon, one of whom was called Michael, and the other Patrick Michael.

Other objections were made to this deed, which need not be noticed, as this alone was sufficient to warrant its exclusion.

The tax deed to R. F. Ryan was objected to by plaintiff on the ground that no preliminary evidence was produced laying a foundation for its introduction ; and, also, that the deed was void on its face because of the uncertainty of the description of the property as assessed and advertised, and also on the ground that at the time of levying the taxes and the sale of the land Ryan was a claimant of the property, and for that reason could not acquire title to it by paying the taxes by purchase at the tax sale. The Court, notwithstanding these

objections admitted this deed in evidence, and the plaintiff attempted to impeach its validity by showing that a portion of the taxes for which the property was sold were not levied by law nor by any person or body under authority of law.

The assessment of the lot appears by the deed to have been made to "P. M. Dundon and to all owners and claimants known or unknown, and to all owners and claimants of any interest present or future therein, or any lien upon the same."

The third section of the Revenue Act of 1857, as amended by the Act of 1859 (Laws 1859, p. 344,) requires the Assessor to assess all real estate to the person, firm, corporation, association or company owning it, or having the possession, charge or control of it, if known to him ; and it is provided further that the property shall be assessed to the owner or claimant, if he shall be known to the Assessor, " and to all owners and claimants, known or unknown, and to all owners and claimants of any interest, present or future therein, or any lien upon the same, and no error in regard to such owner or claimant shall in anywise affect the validity of such assessment."

When this assessment was made the property did not belong to P. M. Dundon, though it may be he claimed some interest in it; but it was also assessed to " all owners and claimants, known or unknown, and to all owners and claimants of any interest, present or future, therein, or any lien upon the same," and the law declares, as already seen, that no error in regard to such owner or claimant shall in anywise affect the validity of the assessment so made. At the time of the assessment Ryan was in possession of the lot, claiming it, or some interest in it, and by the terms of the assessment it was assessed to him as a claimant, known or unknown, and when he paid the taxes properly levied, he only discharged his own obligation under the law. (*Kelsey* v. *Abbott*, 13 Cal. 609 ; *Moss* v. *Shear*, 25 Cal. 38.) On this point the learned Judge of the Court below charged the jury as follows :

" If the jury believe from the evidence that at the time the property was assessed and offered for sale Ryan claimed it and was in its possession, the tax sale to him and payment by him

would only amount to the payment of the tax which it was his duty to have paid. In such case the sale thereof would not result in passing the title. In other words, he who is on land claiming it to be his is not at liberty to obtain a title by omitting to perform his duty to the State by paying the taxes as they accrue—that such claimant and possessor is not permitted under the law to be delinquent in his duty, and then seek by proof of such delinquency to obtain a title from the State to the land he so occupies."

We are of opinion that this charge to the jury is sound in principle and should be maintained as the law of the land.

Johanna Maume was examined as a witness on behalf of plaintiff to prove Mathew Maume's prior possession of the demanded premises. On her cross examination inquiries were made of her respecting her residence and business. The plaintiff's counsel objected to this course of examination. The objection was overruled, but at the same time his honor the Judge stated that the witness was one of the most respectable women in his neighborhood. To this remark the defendants' counsel excepted, when the Judge further stated that he did not mean to say that she was one of the most respectable, but a woman of respectability. The defendants complain of the conduct of the Judge in this particular as an irregularity of sufficient magnitude to authorize the reversal of the judgment.

From the high and authoritative position of a Judge presiding at a trial before a jury, his influence with them is of vast extent, and he has it in his power by words or actions, or both, to materially prejudice the rights and interests of one or the other of the parties. By words or conduct he may on the one hand support the character or testimony of a witness, or on the other may destroy the same, in the estimation of the jury; and thus his personal and official influence is exerted to the unfair advantage of one of the parties, with a corresponding detriment to the cause of the other. We regret the necessity for an expression of our disapproval of the irregularity of which complaint is made, and though we

do not impugn the expression as designed to aid the side of the plaintiff, we may say, we should not hesitate to reverse the judgment because of it, if the same depended in any material degree upon the testimony of the witness whose character and standing was thus indorsed; but as it is, the testimony of Johanna Maume may be obliterated, and then the fact sought to be proved by her is established by the testimony of several other witnesses of the plaintiff, without any attempt on the part of the defendants to disprove it; besides which, such fact was virtually conceded by the defendants, whose claim to the possession of the premises, as the successors in interest of Mathew Maume, involved them in an admission of his prior right.

There are many other assignments of error in the record, all of which we deem untenable. We cannot give our reasons in this place for our conclusions respecting them, as to do so would be to extend this opinion to a burdensome length.

The transcript of the record and the proceedings in the Court below, seems to have been made up in palpable disregard in one respect of the law on the subject. The appeal is from the judgment and the order denying a new trial. The statute provides that a statement on which a party intends to rely for a new trial shall contain so much of the evidence or reference thereto as may be necessary to explain the grounds specifically set forth therein as causes for a new trial, and no more. (Practice Act, Sec. 195.) A similar provision respecting bills of exception, is contained in section one hundred and ninety of the same Act; and section two hundred and thirty-eight provides that when the party who has the right to appeal wishes a statement of the case to be annexed to the record of the judgment or order, he shall prepare such statement, which shall state specifically the particular errors or grounds on which he intends to rely on the appeal, and shall contain so much of the evidence as may be necessary to explain the particular errors or grounds specified, and no more.

Instead of the statement in this case conforming to these provisions of the statute, or with any one of them, the Dis-

trict Court Reporter's minutes of the testimony is embodied in gross, with every remark made by the Court or counsel, whether important or otherwise, during the progress of the trial; and besides this, long documents are set out in full, when a brief abstract in respect to most of them would have served as useful a purpose as the documents at length, and would have been much more convenient as well as more economical of time and money.  The judgment rolls in the Gleason and Rooney cases are set forth in full, covering over sixty printed pages, when everything in them material for the purpose of the motion for a new trial, or on appeal, might have been embodied in an abstract of one sixth their length.  The labor of examining and mastering the contents of a record thus made up, in order to discover what is material, is greatly enhanced beyond what it would be, were the provisions of the statute referred to observed.

We are aware that it is not unfrequently the case where statements and bills of exception are prepared according to the letter and spirit of the statute, attorneys for respondents insist, by way of amendments, that all the evidence given and all that transpired at the trial shall be set forth in the statement or bill of exceptions, and the Judge who may have tried the cause is asked, not in vain, generally, to order the statement to be so amended and engrossed.  This course of conduct is sometimes adopted on the part of respondents to embarrass and oppress appellants.  Such conduct and such a practice should be discountenanced not only by Courts having power in the premises, but also by all honorable men engaged in the practice of the law.  While it is the duty of Courts, in settling statements, to see that so much of the evidence as may be necessary to explain the grounds assigned as error is stated fully and fairly, we may suggest that a great reform might be effected by exacting a compliance with the law on the subject. (See also Laws 1864, p. 246.)

We have thus noticed the character of the transcript in this case, which is only one of many of the same kind, for the purpose of calling the attention of those who may have cases

to prepare for this Court, to the provisions of the statute prescribing the mode of procedure in the preparation and settlement of statements and bills of exceptions, with the hope that a general reformation in practice in this particular may be effected.

Judgment affirmed.