[Civ. No. 2258. Fourth Appellate District.—May 11, 1939.]

RALPH HUFFINES et al., Respondents, v. STANDARD BRANDS OF CALIFORNIA (a Corporation) et al., Appellants.

[Civ. No. 2259. Fourth Appellate District.—May 11, 1939.]

BARBARA HYATT, a Minor, etc., et al., Respondents, v. STANDARD BRANDS OF CALIFORNIA (a Corporation) et al., Appellants.

Hoge, Pelton & Gunther, Harvey, Johnston & Baker and A. Dal Thomson for Appellants.

Borton, Petrini, Conron & Borton for Respondents.

GRIFFIN, J.—These cases were consolidated for the purpose of trial and were likewise consolidated on appeal. They arose out of a collision between two automobiles. Gloria Huffines, one of the plaintiffs, was the driver of one automobile. J. W. Cowan, defendant, was the driver of the other, acting as a servant and agent of the corporate defendant. Two children, Mary Louise Huffines, and Barbara Hyatt, were passengers in the automobile being driven by Mrs. Huffines. Each is a plaintiff in the respective actions. The trial was before a jury. In the Huffines case a verdict was rendered in favor of the plaintiff Gloria Huffines in the sum of $6,000, and in favor of Ralph Huffines, her husband, for consequential damage and injury to his automobile in the sum of $1350. No damage was found in favor of the plaintiff Mary Louise Huffines. In the Hyatt case, a verdict was rendered in favor of the minor plaintiff in the sum of $1,000. No damage was found in favor of her father and coplaintiff. Judgments were, in each instance, entered upon the verdicts, and the appeals are from the judgments so entered.

The collision occurred at the intersection of Robinson and Flower Streets in Bakersfield. Robinson Street runs north and south and Flower Street runs east and west. Respondent Gloria Huffines was traveling west and the appellant Cowan was traveling south. At the northeast corner of the intersection is a market. Flower Street (on which respondent Gloria Huffines was driving) is a through street with the appropriate boulevard stop signs at the intersection. This respondent was driving a 1936 Plymouth sedan and the appellant Cowan was driving a Chevrolet delivery truck. For the purpose of describing the manner in which the accident happened the testimony of certain witnesses may be paraphrased as follows:

Gloria Huffines: I was involved in an accident on the 25th of June, 1937, at the intersection of Flower and Robinson Streets. I was driving our 1936 Plymouth sedan and at the time my daughter, Mary Louise, and Barbara Hyatt were with me. I had started at the 1500 block on Flower Street about three blocks east of the intersection. I was proceeding west. There is a slight rise in the road just east of the intersection, the brow of which is about two blocks west of where I had started. As I started down this rise in the road I was going between thirty and thirty-five miles per hour. I continued at that speed until I reached about the east wall of the market. At that point I applied my brakes and when I came to the intersection I was going about twenty-five miles an hour. As I entered the intersection there was nothing within the intersection. I saw Mr. Cowan's pickup truck heading south and slightly east, just north of the stop sign. He was not quite up to the stop sign and I presumed he was going to stop and I started across. At that time the front end of my car was entering the intersection. I stepped on the gas and was going on and paid no more attention to the truck driver after that. When the front end of my car reached a point just a little beyond the middle of the intersection I felt the jar of the collision at the rear end of my car. I was knocked unconscious from the blow and I do not remember colliding with a tree later. As I approached the intersection and up to the time of the collision there was no other vehicle in the immediate vicinity of the intersection. At the time my car entered the intersection the defendant's truck was several feet away from the intersection just as if he were coming up to the intersection. I looked at him

(Cowan) as I came into the intersection and started on. I was looking ahead when he struck me. I did not realize that he would strike me until the time of the collision. I looked at the man, knew there was a boulevard stop there, and I thought he would stop and I started myself and paid no more attention to him. I was traveling on the right hand side of Flower Street. In slowing down as I came up to the intersection I applied my brakes, not hard, I just touched my brakes. At the time the collision occurred, I was going twenty to twenty-five miles per hour. The front end of my car was past the center of the intersection and the rear end was east of the center. Just before losing consciousness I felt the jar. I don't remember anything from then until I came to, "sitting on the outside of my car". The car was stopped at a tree west of the intersection on the south side of the street.

Officer Galyen: I was called to the scene of the accident. The point of impact was eight feet east of the center of Robinson and six feet north of the center of Flower. The length of the 1936 sedan is twelve to fourteen feet with the bumper. I inspected the intersection and the approach to the intersection for skid marks. There were no skid marks or tire marks extending from the point of impact toward the east. There were tire burns going from the point of impact to the tree on the pavement showing where the tires when he made the impact had changed the direction of the course of the car, swerved it and went right across the street into the tree. In other words, it showed kind of a skid that turned it kind of sideways and then it looked like they straightened right out and the tires after it straightened out were tire burned, kind of skidding sideways and they came in a little more straight at an angle. It was going rather sideways instead of straight. That is what made the burns on the pavement.

Floyd Walters: I am a mechanic. I went to the scene of the accident to pick up one of the cars. The rear end of the Plymouth was hit on the right rear fender and the right rear bumper and behind the right rear wheel. The cross bar and side of the frame was bent in four inches out of line. This bar was buckled outward. The wheel was crooked and the bumper was torn off.

Mrs. Douglas: I went to the scene of the accident immediately after I heard the crash. I found Mrs. Huffines sitting on the side of the car. She was unconscious. Some-

one asked how the accident happened, and Mr. Cowan, the truck driver, said: "I didn't see her." That is all he said as far as I remember. He said: "Here I am, here is my card," and "I didn't see her."

Reverend Douglas: I went to the scene of the accident. I saw the driver of the truck. I asked him personally how the accident occurred and he said that he was parked over there in front or to the side of the market and started to drive out onto the street, Flower Street, and he didn't see the oncoming car. After that Officer Galyen came up. Officer Galyen told him he was on the wrong side of the street approaching Flower Street from the wrong side of Robinson Street. Mr. Cowan said he was parked over there and that was the occasion of it being so, because he was approaching the street from his place where he was parked.

The appellant J. W. Cowan was not present and did not testify at the trial. Appellants produced a witness who testified that the Huffines car was traveling at a speed of 50 or 55 miles per hour when it passed in front of the market near the intersection. Appellants claim that disinterested witnesses established the fact that the Chevrolet was actually stopped at the time of the impact and that the respondents' car sideswiped the Chevrolet car in passing. They further contend (1) that respondent Gloria Huffines was guilty of contributory negligence as a matter of law, citing *Pattison* v. *Cavanaugh,* 18 Cal. App. (2d) 123 [63 Pac. (2d) 868, 64 Pac. (2d) 945], and *Waizman* v. *Black,* 101 Cal. App. 610 [281 Pac. 1087]; (2) that there was no proof of negligence on the part of appellant Cowan which could have been a proximate cause of the accident; (3) that the minor respondents are likewise precluded from recovery because the negligence of respondent Gloria Huffines was the sole cause of the accident and there was no proof of negligence upon the part of the appellants; (4) that the trial court was guilty of prejudicial misconduct in commenting in the course of the trial; and (5) that the verdicts were highly excessive in amount.

■ Considering the first point raised, we cannot say, as a matter of law, after an examination of the entire record, that respondent Gloria Huffines was guilty of contributory negligence. The question of the contributory negligence of this respondent was submitted to the jury under proper in-

structions. The jury resolved this question in favor of respondents. That finding, under the facts in evidence, cannot be disturbed. (*Bate* v. *Los Angeles Ry. Corp.*, 30 Cal. App. (2d) 604 [86 Pac. (2d) 856]; *Mairo* v. *Yellow Cab Co.*, 208 Cal. 350 [281 Pac. 66]; *Scott* v. *San Bernardino Valley etc. Co.*, 152 Cal. 604 [93 Pac. 677]; *Avalos* v. *Grimale*, 30 Cal. App. (2d) 725 [87 Pac. (2d) 392]; sec. 513, Vehicle Code.)

■ As to the second point, there is evidence that the driver Cowan drove his car from the market on the northeast corner of the intersection in a southerly direction on the east (or wrong) side of Robinson Street. From the facts related, it might be properly inferred that he failed to make a boulevard stop and failed to observe oncoming traffic as he entered the intersection. We find sufficient evidence in the record to warrant the conclusion of the jury that the appellant Cowan was guilty of negligence. (*Keyes* v. *Hawley*, 100 Cal. App. 53, 57 [279 Pac. 674]; Vehicle Code, sec. 552 (1935).)

As to the third point, appellants recognize the rule that any contributory negligence of Gloria Huffines cannot be imputed to the two minors, but contend that whatever negligence inhered in this accident was solely that of Gloria Huffines. The conclusion reached as to the previous points raised sufficiently disposes of this contention.

■ As to the fourth point, the testimony indicates that the Chevrolet truck, as it left the market on the northeast corner of the intersection, proceeded southerly on the east side of Robinson Street as it approached the intersection. Appellants claim that the court committed serious and prejudicial error in a comment, in the course of the trial, upon this phase of the case. The subject was initiated by questions put by counsel for respondents to their witness: "Q. What did Officer Galyen say to him (Cowan)? . . . (A) He said he was parked over there, and that that was the occasion of it being so, because he was approaching the street from his place where he was parked. Mr. Baker. I move to strike the testimony of these two conversations not binding on the Standard Brands of California . . . and . . . as to the defendant Cowan . . . The Court: It is binding on the driver, and of course what the officer said to him standing alone is not good, but then he gave his response to it, and he ex-

plained why. Because of course if the testimony so far is right he was on the wrong side of the street. We will let it stay in as against the driver. . . . The Court: I will strike it out as to the corporation. Mr. Baker: I don't understand the marks to show he was on the wrong side of the street. The Court: If they have it right up there, I am not saying it is right. If he was going south. Mr. Petrini said in his opening statement he was parked on the right in front of the market. If it is a fact, and I can state any of the facts, and I am not stating anything as a fact, but I say if it is a fact and he was going south, and he was on the left hand side of the street, he has got to explain why he is over there. That is what the evidence is so far. I can't state any of the facts, but I can state the law that a man is supposed to drive on the right hand side of the street. Mr. Baker: Captain Galyen said—The Court: . . . If in his conversation he gave that as part of his explanation, so far as the officer is concerned I don't care where he was parked. . . . The Court: I will leave that in as to him."

Appellants contend by this colloquy that the court definitely informed the jury that the respondents were entitled to recover unless the driver "could explain" why he was over there; that this amounted to an instruction to the jury, and that the law no longer requires that exception be made thereto at the time, citing section 647 of the Code of Civil Procedure; *Lawrence* v. *Southern Pac. Co.*, 189 Cal. 434 [208 Pac. 966]; *Primmer* v. *American Car & Foundry Co.*, (Mo. App. 1927) 299 S. W. 825; *Anderson* v. *Mothershead*, 19 Cal. App. (2d) 97 [64 Pac. (2d) 995]; *McMinn* v. *Whelan*, 27 Cal. 300; and 64 Cor. Jur., p. 101.

The trial court in its first instruction given after the submission of the case, read an instruction. The following is an extract therefrom: "I desire to say to you that these instructions embody the law by which you must be governed in arriving at your verdict. . . . Nor are you to infer by any rulings or remarks made by the court during the progress of the trial how the court thinks the case should be decided. . . . " The court then gave the following instruction:

" . . . it is necessary that the plaintiffs prove by a preponderance of the evidence that defendants were guilty of negligence as alleged in the complaint, and that as a proximate result thereof, the plaintiff sustained injuries as al-

leged in the two complaints . . . and there is no burden resting upon any defendant for the purpose of proving that any defendant was not guilty of negligence in or about the driving or operation of the delivery automobile until plaintiffs shall first have established by a preponderance of the evidence that defendants were guilty of negligence, and that such negligence was the proximate cause of the injury to plaintiffs.''

This was followed by another instruction:

''Negligence upon the part of either the plaintiff or defendant is of no consequence in the case unless you find that such negligence was a proximate cause of the injury (defining proximate cause) . . . ''

Several other proper instructions were given in addition to the above on the element of proximate cause, contributory negligence and the doctrine of preponderance of evidence.

The statement of the court in response to the argument of counsel might well have been omitted. If properly called to the attention of the court it no doubt would have instructed the jury to disregard it. The court subsequently gave proper instructions bearing on the point. The evidence is conclusive that the driver was on the east (or wrong) side of Robinson Street at the time in question. (Sec. 525, Vehicle Code.) A proper instruction in reference to the burden of proof was subsequently given.

Considering the entire instructions given, we are not convinced that the remarks of the court had a prejudicial effect. (Sec. 4½, art. VI, Const.; *People* v. *Weeks,* 104 Cal. App. 708 [286 Pac. 514]; *Tierney* v. *Charles Nelson Co.,* 19 Cal. App. (2d) 34 [64 Pac. (2d) 1150].)

█ Considering the fifth and last point, the evidence discloses the injury to Gloria Huffines to be this: After the accident she was in a dazed condition; one tooth was knocked completely out and the others loosened and subsequently removed; her lower lip was cut, leaving a scar; her lips were mashed and some of the bone process about the upper teeth was shattered and removed; her eyes were blackened; she was bruised generally. There was a sharp conflict in the testimony, but the evidence discloses some permanent injury to her back, right shoulder and leg; there was an injury to her chest, causing pain; a nervous condition fol-

lowed; she was confined to her bed intermittently for about two months.

A summary of the evidence concerning the injury to respondent Barbara Hyatt is as follows: This respondent's mother testified that before the accident the condition of her daughter's teeth was good, but that as a result of the accident almost one-half of a front incisor tooth was broken off diagonally and three other permanent teeth were chipped; that considerable work would be necessary to correct the condition of the child's teeth and that it would be six years before any permanent work could be done; that after the accident her lips were bleeding and mangled; there was a slight injury to her elbow; the X-ray revealed a chip broken off in the elbow joint; her arm was in a sling for several weeks.

Appellants cite as authority for their contention that the verdicts were excessive *Jordan* v. *Checker Cab Co., Inc.,* (1928) 10 La. App. 132 [120 So. 426]; *Steinbrun* v. *Smith,* 123 Cal. App. 697 [11 Pac. (2d) 868]; *Sundberg* v. *Ringel,* 100 Cal. App. 545 [280 Pac. 557].

We are of the opinion that the verdicts rendered are not so grossly disproportionate to any reasonable compensation as would suggest passion, prejudice or corruption on the part of the jury. (*Morris* v. *Standard Oil Co.,* 188 Cal. 468 [205 Pac. 1073]; *Hale* v. *San Bernardino etc. Co.,* 156 Cal. 713 [106 Pac. 83]; *Merrill* v. *Los Angeles Gas & Elec. Co.,* 158 Cal. 499 [111 Pac. 534, 139 Am. St. Rep. 134, 31 L. R. A. (N. S.) 559].)

For the reasons herein expressed, the judgments are affirmed.

Barnard, P. J., and Marks, J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 10, 1939.