[Civ. No. 5452.   Fourth Dist.   June 25, 1957.]

YASUKOCHI, INC. (a Corporation), Appellant, v. JOHN S. McKIBBIN et al., Respondents.

Charles A. Thomasset for Appellant.

Luce, Forward, Kunzel & Scripps for Respondents.

GRIFFIN, J.—Plaintiff, a corporation, a crop grower in San Luis Rey Valley, employed defendants to spray a crop of chili peppers (125 acres) by aircraft with an insecticide supplied by plaintiff, and composed of Malathion and DDT. Plaintiff alleged in its complaint that defendants mixed with this spray some foreign substance, known to defendants and not known to plaintiff, which had been carelessly mixed by defendants and incorporated with the Malathion and DDT, which injured the plants, resulting in an inhibition in growth, development and yield. Damages for $65,000 are sought. Defendants denied generally these allegations. A jury trial resulted in a verdict for defendants. A motion for new trial and judgment notwithstanding the verdict were denied.

At the trial plaintiff adduced certain testimony indicating that a foreign substance known as Esteron 1010 or 2, 4-D, a herbicide injurious to pepper plants, may have have been previously used on another ranch from the plane's polished sheet aluminum tank and it had not thereafter been properly cleaned.

Plaintiff's manager testified defendants had dusted his crops before; that plaintiff decided it would be more economical to spray; that the spray, furnished by plaintiff, was applied on June 25th and 26th, and around July 25th he noticed abnormal symptoms in the crop; that he and defendants observed the condition and were unable to diagnose it; and that experts made an inspection. He said that defendants admitted the equipment used to spray plaintiff's crop had been previously used to spray 2, 4-D and that defendants said they probably had not cleaned out the tank well enough; that he compared the crop yield in 1953 with that in 1954, and calculated, from the difference in yield, cost of labor, etc., a loss of profit of $25,669.75.

Defendant John S. McKibbin testified the spray, furnished by plaintiff, was mixed with water at the airport; that the

same plane was used on the two days indicated; that before using it on plaintiff's pepper plants and other plants on the 26th of June he used it in spraying tomatoes on another ranch; used it in spraying pepper plants before and after June 26th on other ranches, without known difficulties; that on June 14th and June 23d he sprayed a ranch with Esteron and Diesel oil, a weed killer spray; that before using plaintiff's spray on the 25th, he flushed all of the equipment, including the tank, at least three times with a 180-gallon mix of household ammonia, water and detergent soap; that this was a sufficient precaution, "a standard procedure for years," was according to the recommendations of the University of California; and that he had been a licensed pest control operator since 1951, and had a permit to do this kind of work since 1947.

Plaintiff's experts testified generally that they inspected the crop and the plants showed abnormalities which were not, in their opinion, pathological, but were due to "2, 4-D-like influence"; that it is "most impossible" to decontaminate equipment used to spray 2, 4-D, and chili peppers are sensitive to this spray.

The evidence showed that plaintiff had a total of 350 acres of peppers planted; that only the 125 acres sprayed were seeded and used as nursery stock and the rest were transplanted from the 125-acre tract; that there had been transplanting in that extra acreage for at least 10 days before the spraying; that no fields planted by plaintiff after June 25th were found, that did not have some similar damage, although those transplanted before June 25th (about 100 acres) did not show the effects of the spray and did produce a marketable crop; and that these other fields were shown to plaintiff's experts when they examined the 125-acre tract. It also appears that these other fields were sprayed again about July 15th by defendants in the same manner, but plaintiff claims the real injury came from the spraying of the seed stock on the 125-acre tract on June 25th and 26th; and that by harvesting time all plants showed some signs of damage. Plaintiff's expert also testified that on all the fields of peppers he inspected on plaintiff's ranch that summer, the damage appeared to be uniform.

Defendants denied the admissions plaintiff claimed they made in reference to not properly cleaning the tank before using the spray furnished by plaintiff and claimed they took all necessary precautions before using it. There

was at least considerable doubt in the evidence as to whether there was damage done to the bedding acreage by reason of the failure of defendants to properly flush the equipment prior to its use on June 25th and 26th, and whether the damage done was the result of this negligence as distinguished from some other cause which was not apparent. Even the experts, in expressing their opinions, were not certain in regard to it. One of them said, in answer to a hypothetical question, ''It seems quite possible to draw'' the inference that the airplane was a competent producing cause of 2, 4-D damage to the chili peppers, and he ''would think it might have something to do with it''; that there was a risk of the plane not being adequately flushed out; that there was a possibility that enough 2, 4-D had been left absorbed in the surface of the metal after the flushing to show symptoms on sensitive plants; and that the plane, under the circumstances related ''could have caused the injury.''

Of course the burden of proving plaintiff's case and that the injury to the plants was occasioned by defendants' negligence and not otherwise, was upon plaintiff. Defendants denied any such negligence and claimed proper precautions were taken and concede they do not know whether plaintiff's crops were damaged by their acts or from other causes. At least the jury was permitted to hold that plaintiff had failed in this necessary proof. Under these circumstances the court was justified in denying the motion for new trial and motion to enter judgment in favor of plaintiff notwithstanding the verdict. (*Bushey* v. *Union Oil Co.*, 13 Cal.App.2d 350 [56 P.2d 1272]; *Huffines* v. *Standard Brands of Calif.*, 32 Cal. App.2d 634 [90 P.2d 599].) It was a factual question and not one of law. Had a verdict been rendered in plaintiff's favor, a different question might here arise.

██ Some complaint is made of a ruling of the court in not allowing a certain witness, a farm advisor, to testify as to whether the spray equipment used by defendants was, under the circumstances related, a producing cause of the 2, 4-D damage. An objection was sustained because of the lack of showing of qualifications. ██ Usually, the question of an expert's qualifications is for the determination of the trial court. It may well appear to us, from the factual background related by the witness, that he was qualified to answer the question. ██ Apparently, by his question, counsel for plaintiff was endeavoring to get before the jury the contents of two weed circulars, dated June, 1955, a year after this

occurrence, numbers 41 and 46, issued by the Agricultural Department of the state, which were not intended for general circulation but more for instructions to the farm advisors in different communities, to the effect that it was dangerous to first use in a tank 2, 4-D weed killer and later use other sprays, because of the likelihood of ineffective cleaning. The court properly sustained the objection to the offer of the circulars in evidence as having no proper foundation. Merely because the witness had read these circulars would not make him an expert on the subject. Plaintiff, however, cannot be heard to complain in this respect because, subsequently, in chambers and during the trial, this ruling was discussed by the court and counsel. The court told plaintiff's counsel he would allow his claimed expert to again take the stand and answer the questions if he felt he had the ability to answer them without bringing in the contents of these circulars. Plaintiff failed to recall the witness. No prejudicial error appears.

Judgment affirmed.

Barnard, P. J., and Mussell, J., concurred.